**UNITED STATES of America, Appellee–Cross–Appellant,**

v.

**John STANLEY, Defendant–Appellant Cross–Appellee.**

**Nos. 911, 1063, Dockets Nos. 90–1505, 90–1511.**

United States Court of Appeals, Second Circuit.

Argued Jan. 31, 1991.

Decided March 21, 1991.

Colleen P. Cassidy, New York City, The Legal Aid Soc., Federal Defender Services Unit, for defendant-appellant cross-appellee.

Jonathan D. Polkes, Brooklyn, N.Y., Asst. U.S. Atty. E.D.N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Susan Corkery, Matthew E. Fishbein, Asst. U.S. Attys., of counsel), for appellee-cross-appellant.

Before FEINBERG, MESKILL and CARDAMONE, Circuit Judges.

FEINBERG, Circuit Judge:

This case raises a significant and difficult issue in the application of the Sentencing Guidelines: whether the sentencing judge may depart downward from the guideline range because of a disparity in sentence between defendants who have engaged in similar conduct but are charged with different offenses as a result of plea-bargaining decisions by the prosecutor.

John Stanley was convicted in July 1990 in the United States District Court for the Eastern District of New York, Edward R. Korman, J., after a jury trial, on one count of possessing more than five grams of crack with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and one count of using a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). In sentencing Stanley, the district judge departed downward from the range prescribed by the Sentencing Guidelines because of what he perceived as an unwarranted disparity in sentences caused by the use of § 924(c) in plea negotiations by the United States Attorney for the Eastern District of New York. Stanley appeals from his conviction, challenging the sufficiency of the evidence to support it, and the government cross-appeals, challenging the ground for the downward departure. For reasons set forth below, we affirm on Stanley's appeal, but conclude that the downward departure was improper and remand for resentencing.

### I. Sufficiency of the Evidence

Stanley challenges the sufficiency of the evidence to support his conviction on both the narcotics count and the firearm count. It is well settled that in reviewing such a claim, we must uphold the jury's verdict if, viewing the evidence in the light most favorable to the government and construing all possible inferences in its favor, any rational trier of fact could have found the essential elements of the crime. See, e.g., *United States v. Torres*, 901 F.2d 205, 216 (2d Cir.), cert. denied, —— U.S. ——, 111

S.Ct. 273, 112 L.Ed.2d 229 (1990); see also *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

Stanley's arrest resulted from the execution of a search warrant for a two-story building in Queens in the early morning of August 11, 1988. The government's evidence at trial showed that after the agents executing the warrant announced themselves at both the building entrance and the entrance to an apartment, they entered a bedroom within the apartment. There they found Stanley lunging from the bed, in which he and his girlfriend had apparently been sleeping, toward a dresser drawer, which was later found to contain a gun and ammunition. Stanley ignored the agents' shouted command, "Freeze, FBI," and the agents had to physically restrain him. The agents found drugs and drug paraphernalia in a number of places in the apartment, including the bedroom where Stanley was found, in quantities indicating that the apartment was used as a crack-packaging factory. Stanley thereafter dressed in clothes from the bedroom, including a shirt taken from a dresser drawer. When asked for his home address, Stanley gave the address of the building.

In his defense, Stanley offered the evidence of his brother, Earlous Tripp, who had pled guilty to drug trafficking and was cooperating with the government in other cases. Tripp testified that the apartment and the gun belonged to him, admitted that he used the apartment for storing and packaging drugs and also admitted that he limited access to the apartment to people whom he trusted to protect his drugs. Stanley also testified himself. He stated that he stayed in the apartment from time to time but did not live there, denied knowledge of the gun and denied reaching toward the drawer or moving from the bed at all when the agents came in. He also claimed that he did not see the drugs or drug paraphernalia in the apartment, relating an implausible story to account for not seeing the items in plain view.

Stanley principally argues that the most a jury could conclude from this evidence was that he was present in an apartment containing drugs, or that he was present with knowledge that a drug operation was going on. Relying on such decisions as *United States v. Gaviria,* 740 F.2d 174 (2d Cir.1984), and *United States v. Soto,* 716 F.2d 989 (2d Cir.1983), he argues that mere presence, even with the knowledge of drug activity, is insufficient to show that he knowingly and intentionally had dominion or control over the drugs or aided and abetted the commission of the charged narcotics offense. Stanley argues that even drawing all inferences in favor of the government, and accepting, as he must, the agents' version of the events, his action in reaching toward the gun showed merely attempted possession of a firearm, not that the gun or his use of it had anything to do with drugs.

■ We disagree. As the government argues, the jury could infer from Stanley's lunge for the gun concealed in the dresser that he was familiar with the apartment and its contents, including the drugs and drug paraphernalia found there. Because Stanley reached for the gun in response to the announced entry of law enforcement authorities, and also because Tripp acknowledged that he limited access to the apartment to those who would protect his drugs, the jury could also infer that Stanley was using the gun in defense of the drugs as a participant in the crack operation. These inferences could be supported by finding that the apartment housing the crack operation was also Stanley's home, based on Stanley's presence, his reach for the gun, the clothing taken from the drawer and his statement as to his home address. Finally, the jury was entitled to disbelieve Stanley's testimony, and use its disbelief to supplement the other evidence against him. See, e.g., *United States v. Tyler,* 758 F.2d 66, 69–70 (2d Cir.1985). Although appellant suggests competing inferences and explanations, it is the jury's task, not ours, to choose among them. The evidence, with the inferences to be drawn therefrom, was sufficient to allow a rational jury to find Stanley guilty on each of the two counts.

## II. *Downward Departure in Sentencing*

The issues raised by the government's cross-appeal are much more difficult. Stanley was originally indicted on a single count of possession with intent to distribute more than five grams of crack in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), an offense carrying a mandatory five-year minimum sentence and a 40-year maximum. Pursuant to an agreement with the government, he pled guilty in December 1988 to a superseding information charging him with possession of an unspecified quantity of crack in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), an offense with no mandatory minimum term of incarceration and a 20-year maximum.

After a presentence report had been prepared, Stanley, who was represented by new counsel, moved to withdraw his plea. The record of the plea withdrawal is sketchy at best. However, it appears from later proceedings that the district court allowed Stanley to withdraw the plea in part because of the court's view of the competence of Stanley's prior counsel, who had been involved in the plea negotiations. The court's confidence in prior counsel had been undermined by that counsel's failure to challenge certain aspects of the presentence report and an apparently gross underestimation of the applicable sentencing guideline range. The court also believed that the plea agreement offered no benefit to Stanley; the change in the section charged did not affect the applicable sentencing guideline calculations, and apparently neither the Assistant United States Attorney present (who was not involved in the original plea negotiations) nor defense counsel identified any other benefit.

After Stanley withdrew his plea, the government filed the instant superseding indictment, which reinstated the original § 841(b)(1)(B) narcotics charge, and added a count charging Stanley with use of a firearm in connection with narcotics trafficking in violation of 18 U.S.C. § 924(c). The latter offense carried a mandatory five-year sentence to be served consecutively to the sentence on the underlying narcotics offense. As stated above, the jury convicted Stanley on both counts.

The district court determined that Stanley's offense level for the narcotics count without taking the firearm into account was 28, resulting in a guideline range for his criminal history category of 87–108 months. Possession of a firearm during a narcotics trafficking offense is a specific offense characteristic under the Guidelines, and requires a two-level increase in the otherwise applicable offense level. United States Sentencing Guidelines (U.S.S.G.) § 2D1.1(b)(1). If this two-level increase were applied to Stanley, his offense level would be 30, with a guideline range of 108–135 months. However, the Guidelines also direct that if a defendant is convicted under 18 U.S.C. § 924(c), the enhancement should be disregarded, and the defendant should be sentenced to the consecutive five-year term mandated by the statute. U.S.S.G. § 2K2.4(a) & application note 2. Disregarding the two-level enhancement and adding the mandatory consecutive five-year term for the § 924(c) count results in a much higher total imprisonment range; in Stanley's case that range is 147–168 months.

### 1. *Prosecutorial vindictiveness.*

The district judge was initially concerned with the possibility of prosecutorial vindictiveness. He noted that the § 924(c) firearm charge was added after Stanley's plea was withdrawn, and questioned whether this created the appearance that the prosecutor was attempting to punish Stanley for exercising his constitutional right to trial. In response to the district judge's inquiry, the Assistant who tried the case contacted the prior prosecutors. He determined that Stanley and his original counsel had been informed by the original prosecutor that the § 924(c) count could be added if the plea agreement was rejected. In addition, the government stated that a different Assistant had renewed the plea offer after the plea had been withdrawn but before the superseding indictment had been filed. Defense counsel stated that he did not contest these representations, and the district

court concluded that the vindictive-prosecution issue had been eliminated.

On the record before us, we must accept the government's representations as to the use of the § 924(c) count in plea negotiations. However, we note that had the district court been informed at the time of the plea withdrawal that Stanley's plea had disposed of the potential § 924(c) charge (which would have been a sensible response to the court's expressed concern in open court that the plea provided no benefit), the issue of vindictive prosecution would not have arisen at sentencing. While we recognize that the prosecutor present at the plea withdrawal proceedings was not the Assistant who participated in the earlier plea negotiations, we urge the United States Attorney to take appropriate steps to ensure that information of this sort is transmitted to the prosecutors handling different stages of a case.

In any event, we agree with the district court's analysis of the issue of vindictive prosecution. The Supreme Court has made clear that threatening to bring otherwise legitimate charges to induce a defendant to accept a plea bargain "no more than openly present[s] the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he [is] plainly subject to prosecution." *Bordenkircher v. Hayes*, 434 U.S. 357, 365, 98 S.Ct. 663, 669, 54 L.Ed.2d 604 (1978); see *United States v. Goodwin*, 457 U.S. 368, 377–80, 102 S.Ct. 2485, 2490–92, 73 L.Ed.2d 74 (1982). Moreover, so long as the defendant was free to accept or reject the prosecutor's offer, the prosecutor may carry out his threat. *Bordenkircher v. Hayes*, 434 U.S. at 363–65, 98 S.Ct. at 667–69; see *United States v. Goodwin*, 457 U.S. at 377–80, 102 S.Ct. at 2490–92. Accepting the government's representations that the § 924(c) count was discussed with defendant during plea negotiations both before and after withdrawal of the plea, we agree that the issue of vindictive prosecution had been eliminated.

## 2. *Disparity caused by plea-bargaining practices.*

The district court raised a second concern, which ultimately formed the basis for its downward departure in sentencing. The judge found that the United States Attorney for the Eastern District of New York often charges defendants who refuse to plead guilty with § 924(c) if the section is applicable, but allows similarly situated defendants who plead guilty to avoid § 924(c) charges, i.e., it "is not unusual" that § 924(c) is used "as a chip in plea bargaining."[1] Because of the difference between the statutory penalty mandated by § 924(c) and the otherwise applicable (and lower) two-level enhancement for use of a weapon, the district court found that this plea-bargaining practice creates a disparity between those defendants who plead guilty and those who go to trial.

To eliminate the disparity, the district court departed downward from the guideline range of 87–108 months for the narcotics count and imposed a sentence of 60 months on that count. Thereafter, the court simply imposed the mandatory five-year consecutive sentence on the § 924(c) count. Thus, the downward departure resulted in a total term of imprisonment, including the 60 months required by § 924(c), of 120 months. That sentence is within the guideline range (enhanced by two levels) of 108–135 months that would have applied if there had been no separate § 924(c) conviction. In support of the downward departure, the district court cited the statutory command to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and explained:

> The disparity is "unwarranted" because the Sentencing Commission has made it plain that plea bargaining should not be used to alter otherwise appropriate sentences. United States Sentencing Commission, *Guidelines Manual*, Chap.

---

1. The government characterizes this finding as clearly erroneous. The government does not press this claim, although it appears on this record to be a substantial argument, but argues that accepting the finding does not change the result. We assume for purposes of this opinion that the "practice" identified by the district court does exist.

6, Pt.B, intro. comment, p. 6.5 (Nov. 1989). Moreover, in formulating the guidelines for this case—a narcotics offense involving the use of a weapon in which the defendant was charged with a violation of Section 924(c)—the Sentencing Commission did not foresee that it would be applied only to defendants who refused to plead guilty to the underlying narcotics offense and thereby create the disparity described above. The departure in this case eliminates that disparity.

■ Although the district court has "sensible flexibility" to depart from the Guidelines, the departure must be based on a permissible ground, i.e., on "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." *United States v. Lara,* 905 F.2d 599, 602–03 (2d Cir.1990); see 18 U.S.C. § 3553(b). Whether the factor on which the district court relied is a permissible one is a question of law, subject to de novo review. See, e.g., *United States v. Lara,* 905 F.2d at 602.

Eliminating "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct," is unquestionably a principal congressional goal both for the Sentencing Commission, 28 U.S.C. § 991(b)(1)(B), and, as the district court noted, for the sentencing judge, see 18 U.S.C. § 3553(a)(6). However, as we have recently stated, "[t]he method chosen by Congress to avoid unwarranted disparities is a guideline system that prescribes appropriate sentencing ranges for various combinations of facts concerning an offense and an offender and permits a sentencing judge to depart from the recommended range in unusual circumstances." *United States v. Joyner,* 924 F.2d 454, 460 (2d Cir.1991). We went on to observe that the statutory standard would allow departure if an identified "disparity" was not adequately considered by the Commission, or, even if it was so considered, was present in an individual case "to such a degree as to have been beyond the Commission's consideration." Id.

The Commission certainly considered that both the two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) and the five-year mandatory consecutive sentence under § 924(c) could apply to the same defendant, and included in the Guidelines an explicit instruction that in such cases only the statutory penalty should be imposed. U.S.S.G. § 2K2.4(a), application note 2. Theoretically, this creates no "disparity"; the defendant on whom the two-level enhancement is imposed may have engaged in criminal conduct similar to the conduct underlying a § 924(c) conviction, but he has not been *"found guilty* of similar criminal conduct." 28 U.S.C. § 991(b)(1)(B) (emphasis added); see also 18 U.S.C. § 3553(a)(6). *The defendant on whom the two-level increase is imposed receives a sentence enhancement for use of a gun; the defendant convicted of § 924(c) receives a separate sentence for such conduct. See *United States v. Rodriguez–Gonzalez,* 899 F.2d 177, 180–81 (2d Cir.), cert. denied, —— U.S. ——, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990).

The district court nevertheless suggested that by often choosing to bring § 924(c) charges only against certain defendants—those who do not plead guilty to the underlying narcotics offense—the United States Attorney is creating an "unwarranted disparity" in sentencing among similarly situated defendants. The "disparity" identified by the district court, however, is not limited to the United States Attorney's decision to assert or forgo § 924(c) charges; it exists whenever the prosecutor exercises his broad discretion to forgo a charge on which a defendant could legitimately be prosecuted, convicted and sentenced. Whether the prosecutor declines to bring a charge at all, or, as is not uncommon, selects among a variety of applicable criminal statutes with different penalties, he is creating a "disparity" between the sentences imposed on different defendants. And he undoubtedly has the authority to do so.

■ Although "[s]electivity in the enforcement of criminal laws is, of course, subject to constitutional constraints," "[w]hether to prosecute and what charge to file or bring before a grand jury are

decisions that generally rest in the prosecutor's discretion." *United States v. Batchelder*, 442 U.S. 114, 124–25, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979). Moreover, the prosecutor's discretionary authority extends to choosing among statutes that impose different penalties, even if they are violated by the same conduct. Id. at 125, 99 S.Ct. at 2204–05. In *Batchelder*, the defendant was charged and convicted of violating a statute with a maximum imprisonment term of five years, and was sentenced to the maximum. The identical conduct violated another statute with a maximum sentence of two years. Rejecting the defendant's constitutional challenges to his five-year sentence, the Court relied on the long-recognized principle that "when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." Id. at 123–24, 99 S.Ct. at 2204. Since *Batchelder* permits the government to choose between different statutory penalty schemes applicable to the same conduct, there is no impropriety in the government's exercise of its discretion to choose between asserting a § 924(c) charge and seeking a two-level sentence enhancement under U.S.S.G. § 2D1.1(b)(1), so long as its selection is not "based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 669, 54 L.Ed.2d 604 (1978) (citation omitted). See also *United States v. Foote*, 898 F.2d 659, 666 (8th Cir.), cert. denied, — U.S. —, 111 S.Ct. 112, 112 L.Ed.2d 81 (1990), where the Eighth Circuit rejected defendants' claim that the government's ability to choose between § 924(c) and U.S.S.G. § 2D1.1(b)(1) invalidated the Guidelines by causing "unwarranted sentence disparities."

■ The district court's decision here, however, is not based solely on the government's ability to create a "disparity" by forgoing § 924(c) charges, but on the government's use of that ability to impose greater penalties on the class of defendants who refuse to plead to the underlying charges. But when the Supreme Court recognized that it is "constitutionally legit-imate" for the prosecutor to threaten more serious charges to persuade the defendant to plead guilty, it also recognized that "the prosecutor's desire to induce a guilty plea," unlike race or religion, is not an "unjustifiable standard" of selection in enforcement. *Bordenkircher v. Hayes*, 434 U.S. at 364–65, 98 S.Ct. at 668–69. Of course, concluding that the plea bargaining practice that troubled the district court is constitutionally legitimate does not end the inquiry. It is still necessary to determine whether the practice created "unwarranted sentencing disparities" sufficient to justify a downward departure from the guidelines range.

It is noteworthy that in *Bordenkircher*, as here, the prosecutor threatened the defendant with a mandatory statutory penalty. In that case, to induce the defendant to plead guilty to violating a state statute punishable by two to 10 years, the prosecutor threatened to seek a superseding indictment charging violation of the state's habitual offender statute, indisputably applicable to the defendant, which mandated a sentence of life imprisonment. When the defendant refused the plea offer, the prosecutor carried out his threat. The Sixth Circuit overturned the sentence of life imprisonment, but the Supreme Court reversed. Id. at 358–60, 98 S.Ct. at 665–66.

[5] The different statutory penalties applicable to the defendant's conduct in *Bordenkircher* were two to 10 years and mandatory life imprisonment. The disparity between these penalties is substantial, but the court in *Bordenkircher* allowed the life sentence to stand; doubtless this was because fixing penalties for statutory violations is a matter for legislative judgment, and the legislature may require the imposition of minimum sentences or fixed mandatory sentences. See, e.g., *Mistretta v. United States*, 488 U.S. 361, 364–65, 109 S.Ct. 647, 650–51, 102 L.Ed.2d 714 (1989); *United States v. Vizcaino*, 870 F.2d 52, 55 (2d Cir.1989). Thus, the legislative judgment that conviction of § 924(c) warrants a mandatory consecutive five-year term compels the conclusion that imposition of that sentence does not create an "unwarranted"

disparity with the sentences of those not convicted.

■ We do not believe that this conclusion is affected by the use of § 924(c), in the district court's phrase, "as a chip in plea bargaining." As *Bordenkircher* demonstrates, the fact that a charge was used in plea bargaining does not mean that the penalty mandated by statute does not apply. It was the intention of Congress that the five-year penalty mandated by § 924(c) be imposed *"in addition* to any other term of imprisonment." *United States v. Lawrence,* 928 F.2d 36, 38 (2d Cir.1991) (emphasis added). By reducing the "other term of imprisonment," i.e., the sentence on the underlying narcotics offense, the district court ensured that the defendant would not receive any *additional* imprisonment term because of his § 924(c) conviction. Although technically complying with the statute, the sentence imposed nullified the legislative intent of *additional* punishment for violating § 924(c). Unless we can conclude that Congress did not intend to require additional punishment for conviction under § 924(c) when that charge was used as a threat in plea-bargaining, a conclusion for which we find no support, we cannot conclude that the downward departure rectified a "disparity" that was "unwarranted."

As a related, but apparently independent, ground for downward departure, the district court found that under the Guidelines, "plea bargaining should not be used to alter otherwise appropriate sentences." However, the Sentencing Commission recognized that the overwhelming majority of federal criminal cases are disposed of by plea, many of them involving some form of plea agreement. See U.S.S.G., Ch. 1, Part A, Introduction (4)(c). Rather than attempting to "make major changes in plea agreement practices" in the initial Guidelines, the Commission stated it would instead "provide guidance by issuing general policy statements concerning the acceptance of plea agreements." Id. (Nov. 1990). Those policy statements, on which the district court relied, are "intended to ensure that plea negotiation practices ... do not perpetuate unwarranted sentencing disparity," U.S.S.G. Ch. 6, Part B, introductory commentary, in accordance with the congressional expectation that judges will " 'examine plea agreements to make certain that prosecutors have not used plea bargaining to undermine the sentencing guidelines,' " id. (quoting S.Rep. 98–225, 98th Cong., 1st Sess. 63 (1983), reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3246).

Especially in light of the Commission's disavowal of any intention to "make major changes in plea agreement practices," we cannot interpret these comments, as the district court did, to prohibit the use in plea negotiations of the prosecutor's discretion to select among chargeable offenses and thereby alter sentences. Indeed, we believe that if plea bargains could not alter sentences, most defendants would have little interest in bargaining. Moreover, the Commission's policy statements themselves caution that a judge's power to determine whether a plea agreement adequately reflects the seriousness of the offense "does not authorize judges to intrude upon the charging discretion of the prosecutor." U.S.S.G. § 6B1.2, commentary.

We have recognized that the prosecutor's control of charging decisions can result in the imposition of different sentences for approximately the same conduct, and that in some circumstances judges can "ameliorate to some extent the skewing occasioned by plea bargaining." *United States v. Correa–Vargas,* 860 F.2d 35, 39–40 (2d Cir. 1988). In *Correa–Vargas,* we affirmed an upward departure from the guideline range because the defendant's conduct involved a large quantity of narcotics, an aggravating circumstance, which was not adequately accounted for by the guideline range for the offense to which he pled guilty. We do not foreclose the possibility that a prosecutor's charging decision or a plea agreement could also result in omitting a mitigating circumstance from the calculation of a guideline range, in which case a downward departure might be appropriate.

Here, however, the only "mitigating circumstance" identified is the fact that de-

fendants who engaged in similar conduct but agreed to plead guilty to lesser charges received less punishment than Stanley would receive. No ground for departure pertaining specifically to this individual defendant, his conduct or his offense was identified. There is no viable claim before us of misconduct by the prosecutor or coercion of the defendant. Indeed, the district judge himself indicated that if the government could identify some reason for the exercise of prosecutorial discretion to assert the § 924(c) firearm charge other than the desire to induce a guilty plea, he would not consider departing from the guideline range in this case. We are left, then, with no remaining basis for departure except the judge's disapproval of the manner in which the United States Attorney for the Eastern District of New York generally exercises his discretion in negotiating plea agreements in narcotics cases involving use of a firearm. We do not believe that substituting the judge's view of the proper general prosecutorial policy for that of the prosecutor constitutes a valid ground for departure from the guideline range.

It is true that our decision today to some extent "transfers discretion from the district judge to the prosecutor," *United States v. Correa-Vargas*, 860 F.2d at 40. In the circumstances of that case, we noted that "[a] rigid refusal to allow judges to depart from the Guidelines ... simply always transfers discretion from the district judge to the prosecutor" and that this was "a result that we believe Congress did not intend." *Id.* The Federal Courts Study Committee has likewise reported concerns that the Guidelines are "causing a massive, though unintended, transfer of discretion and authority from the court to the prosecutor." Report of the Federal Courts Study Committee, April 2, 1990, reprinted in 2 Federal Sentencing Reporter 232, 234 (1990). However, we also note that the Sentencing Commission is continuing its evaluation of the impact of the Guidelines on prosecutorial discretion and plea bargaining, which will include "an assessment of whether and to what extent discretion in sentencing has shifted as a result of the guidelines." United States Sentencing Commission, 1989 Annual Report 59–61. If the Guidelines have resulted in the transfer of too much discretion from the court to the prosecutor, it is of course open to Congress or the Commission to increase a court's authority to depart from the guidelines range in situations like this one, or to otherwise limit the charging discretion of the prosecutor.

On Stanley's appeal, we affirm. On the government's cross-appeal, we vacate the sentence and remand for resentencing in accordance with this opinion.