**UNITED STATES of America**

v.

**Nicholas AGUILAR, Defendant.**

**No. 92 CR 1228 (JBW).**

United States District Court,
E.D. New York.

May 2, 1995.

Brian Moriarty, U.S. Atty.'s Office, Brooklyn, NY, for U.S.

Robert Wolf, New City City, for defendant.

### Memorandum and Order

WEINSTEIN, Senior District Judge.

This case concerns one of a large class of federal criminal prosecutions to which the Guidelines do not, as a practical matter, apply—those disposed of by plea agreement under Federal Rule of Criminal Procedure 11(e)(1)(C). For an earlier view of this case, *see United States v. Mosquera,* 813 F.Supp. 962 (E.D.N.Y.1993) (describing procedures for multi-defendant prosecution).

### I. FACTS

The defendant was indicted for conspiring to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1). According to the government, he headed a 600–kilo distribution network.

In accordance with a global plea agreement covering twelve of sixteen defendants, Aguilar pled guilty to a single conspiracy count. The agreement stated:

> Pursuant to Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure, the Office [of the United States Attorney] and the defendant agree that a specific sentence of 188 months is the appropriate disposition of [Aguilar's] case.

Plea Agreement at 2 (August 13, 1993).

Without this arrangement, the defendant's Guidelines sentence would have been 360 months in prison. In its presentence report, the Probation Department recommended that the court impose that term. Although

noting that an agreement had been reached "[p]ursuant to Rule 11(e)(1)(C)," Presentence Report at 3 (Oct. 6, 1993), the Department stated:

> [T]he Probation Department's independent investigation and guideline calculations yield a guideline imprisonment range of 360 months to life. Assuming the accuracy of our guideline computations, *the Court can only impose a sentence of 188 months via a downward departure* .... However, no downward departure factors are apparent to the Probation Department, and the adversaries have not proposed any [such] factors.

*Id.* (emphasis added). Thus, in the view of the Probation Department, the agreement was unenforceable as incompatible with the Guidelines.

### II. LAW

#### A. The Guidelines

Support for the Probation Department's position—that the sentence must fall within the otherwise-applicable Guidelines range—is found in Guidelines § 6B1.2(c). That section provides:

> In the case of a plea agreement that includes a specific sentence, the court may accept the agreement if the court is satisfied either that:
>
> (1) the agreed sentence is within the applicable guidelines range; or
>
> (2) the agreed sentence departs from the applicable guidelines range for justifiable reasons.

The commentary to this section goes on to define "justifiable reasons" as those reasons that would support a departure under the Guidelines. *See Guidelines Manual* (Nov. 1, 1994) § 6B1.2, at 322 (Commentary) (defining "justifiable reasons" as meaning "*i.e.,* that such departure is authorized by 18 U.S.C. § 3553(b)"). Section 3553(b) of Title 18 of the United States Code, in turn, has been held to mean that departures must follow Guidelines procedures. *See, United States v. DeRiggi,* 45 F.3d 713, 716 (2d Cir. 1995) (Section 3553(b) "assign[s] controlling weight to the Guidelines").

A 1989 amendment substituted the present language—requiring compliance with § 3553(b)—for a less demanding standard: that the agreement "not undermine the basic purposes of sentencing." *See* Amendment to the Commentary to Guidelines § 6B1.2 (Amendment 295) (Nov. 1, 1989). *Cf. Fields v. United States,* 963 F.2d 105, 108 (6th Cir.1992) (under the Guidelines, "[a] sentencing judge could no longer.be forced to abide by an agreed to sentence where that sentence did not conform to the Guidelines, as that would eviscerate their purpose"); *United States v. Kemper,* 908 F.2d 33, 36–37 (6th Cir.1990) (explaining that a presentence report is required even in 11(e)(1)(C) cases, because court must determine if agreed-upon sentence is within Guidelines).

Thus, under § 6B1.2, a sentence that cannot be justified under the Guidelines must arguably be rejected by the court. This conclusion, however, is placed in doubt by the Introduction to the *Guidelines Manual.* There, the Sentencing Commission stated its intention not to "make major changes in [pre-Guidelines] plea agreement practices." *Guidelines Manual,* Chapter 1, Part A, at 7 (Nov. 1, 1994). Its reason: "Nearly ninety percent of all federal criminal cases involve guilty pleas" and significant changes in the plea bargaining system could, consequently, "make the federal system unmanageable." *Id.* at 6–7.

With this prior practice in mind, the Commission decided that the acceptance or rejection of plea agreements would continue to be governed by Federal Rule of Criminal Procedure 11(e). *Id.* at 7. As for the Guidelines, according to the Sentencing Commission, they "*create a norm to which courts will likely refer* when they decide whether, under Rule 11(e), to accept or to reject a plea agreement or recommendation." *Id.* (emphasis added). For further discussion of the decision by the Commission to permit sentence bargaining outside the Guidelines system, and its results, *see, e.g.,* Stephen G. Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest,* 17 Hofstra L.Rev. 1, 31 (1988) (Guidelines reflect Commission's intention to leave the state of plea bargaining "where it found

it"); Eric Komitee, Note, *Bargains Without Benefits: Do the Sentencing Guidelines Permit Upward Departures to Redress the Dismissal of Charges Pursuant to Plea Bargains?,* 69 N.Y.U. L.Rev. ——, —— (forthcoming 1995) (Commission hoped Guidelines would "create an environment in which the prosecution and defense no longer worked 'in the dark' when bargaining. Even this modest goal, however, has not met with any significant level of success.").

■ In reaching the decision to permit sentence bargaining outside the Guidelines, the Commission explicitly rejected the argument that "guidelines that failed to control and limit plea agreements would leave untouched a 'loophole' large enough to undo the good that sentencing guidelines would bring." *Guidelines Manual* at 7.

## B. Rule 11

Federal Rule of Criminal Procedure 11 provides for plea agreements that result in dismissal of charges (Rule 11(e)(1)(A)), sentence recommendations (Rule 11(e)(1)(B)), or sentence agreements (Rule 11(e)(1)(C)). Rule 11(e)(1)(C) states:

> The attorney for the government and the attorney for the defendant ... may ... agree that a specific sentence is the appropriate disposition of the case.

The Rule explains that "the court may accept or reject [such an] agreement." *Id.; see also United States v. Andrade–Larrios,* 39 F.3d 986, 990 (9th Cir.1994) (Rule 11(e)(1)(C) "remove[s judge's] discretion"); *United States v. Nolan,* No. 93–35311, 1994 WL 196756 1994 U.S.App. LEXIS 12357, at *5 (9th Cir. May 18, 1994) (court must impose 11(e)(1)(C) sentence unless "plainly unjust or unfair"). Rule 11(e) makes no reference to the Guidelines. This stands in contrast to Rule 11(c), which was amended in 1989 to require the court, before accepting a plea agreement, to inform the defendant that it "is required to consider any applicable sentencing guidelines." Fed.R.Crim.P. 11(c)(1) (1989). *Cf. United States v. Baker,* 853 F.Supp. 1084, 1089 (N.D.Ill.1994) (noting impossibility of departure from 11(e)(1)(C) agreement, "as there is no way to deduct two points from fifteen years"); *see also* 18 U.S.C. § 3742(c)

(permitting appeal of 11(e)(1)(C) sentence only if it violates plea agreement).

## C. Caselaw

█ The court of appeals for this circuit has held that, under Rule 11(e)(1)(C), a court may "accept or reject [an agreement calling for a specific sentence], *but ... may not modify it.*" *United States v. Cunavelis,* 969 F.2d 1419, 1422 (2d Cir.1992) (emphasis added). In *Cunavelis,* a plea agreement stipulated that after the district court determined the base offense level for the defendant, the court would deduct four levels. At sentencing, the defendant asked the court to consider a further departure, despite the plea agreement. The district court declined to do so. Affirming, the court of appeals held that plea bargains executed pursuant to Rule 11(e)(1)(C)—"in contrast to the precatory nature of agreements made under subdivision (e)(1)(B)—are binding on the district court." *Id.* at 1422. *See also United States v. Braimah,* 3 F.3d 609, 611–12 (2d Cir.1993) (approving *Cunavelis* procedure, described by the court as a waiver of defendant's right to be sentenced pursuant to the Guidelines).

More recently, in *United States v. Toro,* No. 94–1184 (2d Cir. Dec. 30, 1994) (unpublished, but related), one of the defendants asked the court to depart, sua sponte, below the sentence called for in her plea agreement. The court observed that, given the defendant's family circumstances, it had the power to depart; nonetheless, it declined to do so in light of the plea negotiations. Affirming, the court of appeals stated:

> [T]he court in fact did not have the authority to depart.... Once a district court has accepted an agreement made pursuant to Fed.R.Crim.P. 11(e)(1)(C), "it may not modify it."

*Toro* at 2 (quoting *Cunavelis,* 969 F.2d at 1422). In *Toro,* the agreed-upon sentence was far below the sentence called for by the Guidelines.

The decisions in *Toro* and *Cunavelis* are consistent with this circuit's general regard for plea agreements. The court of appeals has consistently endorsed the use of plea agreements—including those reached under Rule 11(e)(1)(C)—as essential to the operation of the courts. *See, e.g., United States v. Stanley,* 928 F.2d 575, 582 (2d Cir.) ("[I]f plea bargains could not alter sentences, most defendants would have little interest in bargaining."), *cert. denied,* 502 U.S. 845, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991).

In *United States v. Pimentel,* 932 F.2d 1029, 1033 (2d Cir.1991), the court urged prosecutors to engage in sentencing bargaining so as to ensure that defendants are not caught off guard at sentencing, thereby reducing the "steady parade of appeals that squander scarce judicial resources and waste the government lawyers' time." *Id.* The court observed that sentence-bargaining made more sense under the Guidelines than before:

> Today, under the Guidelines, the discretion of federal courts with regard to sentencing is greatly restricted. Given that the Guidelines have so circumscribed the judiciary's traditional role in sentencing, we think it even less likely now than before that judges would resist sentence bargains as undue or unseemly intrusions on the judicial function.

932 F.2d at 1033. If the court was aware of the irony of this position—that *ad hoc* bargaining that deliberately circumvents the Guidelines is compatible with a system designed to eliminate disparity in sentencing and encourage openness and truth—it did not say so. The supposed public interest in determinate sentencing, in the view of the court of appeals, did not outweigh the advantages of private deal-making.

Nor was the court, in *Stanley,* concerned about the "circumscribed" role of the district court in sentencing. It noted that "our decision today ... transfers discretion from the district judge to the prosecutor," 928 F.2d at 583 (citation omitted), but that any problem posed by such a shift is "open to Congress or the Commission" to deal with. *Id.*

## III. CONCLUSION

█ Under the caselaw, despite the assertion of the Guidelines' authors that their system would apply to nearly every federal conviction, *see Guidelines Manual* at 10 (Nov. 1, 1994), under Rule 11(e)(1)(C) a large

class of defendants may be sentenced outside the Guidelines. This conclusion, while contrary to the theory of the Guidelines, and to their pretensions of uniformity and truth in sentencing, produces an acceptable result in this and other cases.

Had the court been required to impose the Guidelines sentence, the defendant would have been imprisoned for 30 years—far longer than required for deterrence or any other rational justification for punishment—at great expense to the taxpayers. Moreover, the system would have been deprived of the benefits of negotiations that resulted in the acceptance of twelve guilty pleas at one time. Thus, substantively and procedurally, the agreement produced a more acceptable result than would have resulted from adherence to the Guidelines.

The defendant is sentenced to the agreed-upon sentence, 188 months in prison, plus five years of supervised release and a $50 assessment.

So ordered.