**UNITED STATES of America,**
**Appellee,**

v.

**John MITCHELL, Defendant–**
**Appellant.**

**Docket No. 03–1385.**

United States Court of Appeals,
Second Circuit.

Argued: Dec. 15, 2003.

Decided: Feb. 11, 2004.

Paul J. Van De Graaf, Chief, Criminal Division, Burlington, Vermont (Peter W. Hall, United States Attorney for the District of Vermont, David V. Kirby, First Assistant United States Attorney, Burlington, Vermont, on the brief), for Appellee.

David C. Sleigh, St. Johnsbury, Vermont (Sleigh & Williams, St. Johnsbury, Vermont, on the brief), for Defendant–Appellant.

Before: WALKER, Chief Judge, KEARSE and CABRANES, Circuit Judges.

PER CURIAM:

Defendant John Mitchell, who, with co-defendant David Moodie, robbed a bank on August 6, 2001, appeals from a judgment of conviction entered in the United States District Court for the District of Vermont, William K. Sessions, III, *Chief Judge*, following his plea of guilty to four counts of a five-count superseding indictment, to wit, bank robbery, in violation of 18 U.S.C. § 2113 (count 3), interstate transportation of a stolen vehicle, in violation of 18 U.S.C. § 2312 (count 4), interstate transportation of stolen firearms, in violation of 18 U.S.C. § 922(i) (count 5), and brandishing a firearm during the robbery, in violation of 18 U.S.C. § 924(c) (count 2). Pursuant to the Sentencing Guidelines ("Guidelines"), Mitchell was sentenced to a total of 176 months' imprisonment, comprising 92 months on counts 3–5, followed by 84 months, *i.e.*, the mandatory seven-year consecutive sentence required by 18 U.S.C. § 924(c)(1)(A)(ii), on count 2. On appeal, Mitchell contends that because Moodie was not required to plead guilty to violating

§ 924(c), and hence was not punishable under that section, the district court should have granted Mitchell a downward departure to make his sentence comparable to the sentence applicable to Moodie. Finding no foundation for Mitchell's contention that the district court's refusal to depart was based on an error of law, we dismiss the appeal for lack of appellate jurisdiction. We write, however, to correct an error of law, reflected in the sentencing judge's comments, that was potentially to Mitchell's benefit.

The respective roles of Mitchell and Moodie during the robbery are undisputed. Moodie brandished a rifle at the bank's tellers while Mitchell vaulted the counter and took money from the cash drawers. The two, with a third confederate, Eric Pullen, made off with several thousand dollars. Mitchell was arrested within weeks of the robbery; he promptly confessed to his participation in the robbery and implicated Moodie in that crime and others. The eventual indictment charged Mitchell and Moodie with the four counts on which Mitchell was eventually convicted, described above, plus one count of conspiring to brandish a firearm during the robbery, in violation of 18 U.S.C. § 924(o) (count 1).

Moodie did not confess and initially sought to go to trial. The government asked Mitchell's attorney whether Mitchell would agree to testify against Moodie if Moodie were tried. Mitchell declined. In August 2002, Moodie entered into a plea agreement with the government in which he pleaded guilty only to counts 3–5 of the indictment, *i.e.*, the counts not alleging violation of, or conspiracy to violate, § 924(c). In December 2002, the district court sentenced Moodie to, *inter alia*, a prison term of 96 months, in an upward departure based on factors other than the fact that he might have been convicted

under § 924(c). *See United States v. Moodie,* No. 02–1772, 78 Fed.Appx. 153, 2003 WL 22348903 (2d Cir. Oct.15, 2003) (affirming by summary order).

In October 2002, Mitchell entered into a plea agreement with the government in which he agreed to plead guilty to four counts: counts 3–5 plus count 2, the substantive § 924(c) count. In light of various offense-level adjustments, the imprisonment range prescribed by the Guidelines on counts 3–5 for Mitchell was 92–115 months; with respect to count 2, the court was required by § 924(c)(1)(A)(ii) to impose a consecutive term of seven years' imprisonment, making the minimum prison term prescribed for Mitchell 176 months.

Mitchell moved for a downward departure, arguing that his sentence should not differ radically from the 96–month prison term imposed on Moodie and that there was no rational basis for the government's having allowed Moodie not to plead guilty to a § 924(c) offense, to which Mitchell was required to plead, thereby creating the substantial sentencing disparity. At the sentencing hearing, the government stated that its decision not to insist on Moodie's pleading guilty to a § 924(c) offense was based in part on the government's assessment of "the kind of roles that [Mitchell and Moodie] played in this crime spree" (Sentencing Hearing Transcript, June 16, 2003 ("Tr."), at 14) and in part on its assessment of the strength of the proof it could present against Moodie at a trial. The Assistant United States Attorney ("AUSA") stated that, based on the testimony of Pullen and on other evidence, the government viewed Mitchell as the more culpable of the two. (*See* Tr. 14 ("Mr. Mitchell's participation with Mr. Moody [*sic*] ... led to Mr. Moody [*sic*] being in the place that he was on August 6th, 2001.").) In addition, while noting that the government believed it would have pre-

vailed if Moodie were tried, the AUSA stated that "the evidence against Mr. Moody [*sic*] was less than the evidence against Mr. Mitchell ...." (Tr. 13.) The AUSA also pointed out that the government's case against Moodie would have been stronger if Mitchell had not refused to testify, and that if Mitchell had been willing to testify, as the government requested, he could have bargained for more favorable treatment in his own plea agreement. (*See* Tr. 14–15.)

■ As detailed below, the district court declined to grant Mitchell a downward departure to eliminate the disparity between his sentence and the sentence imposed on Moodie, and Mitchell has appealed. We dismiss the appeal for lack of appellate jurisdiction.

■ It is well established that "[a] defendant's contention that the sentencing court should have granted a downward departure is ordinarily not a proper matter for appeal, ... unless the refusal to depart ... was based on the court's erroneous view of the extent of its departure authority." *United States v. Labeille–Soto,* 163 F.3d 93, 100 (2d Cir.1998). Mitchell attempts to bring himself within this principle by asserting that the district court denied his motion because it erroneously believed it had no authority to depart. (*See* Mitchell brief on appeal at 9–10 ("The court, relying on *Tejada* [*sic; United States v. Tejeda,* 146 F.3d 84 (2d Cir. 1998) ], felt the disparity between co-defendants could not form the basis of a downward departure.").) However, the record squarely contradicts this contention.

In denying Mitchell's departure motion, the district court stated, "Now, in regard to the motion for downward departure based upon the disparity, I *don't* read the *Tejeda* case as indicating that I have no authority to depart. *Clearly I could de-*

*part."* (Tr. 16 (emphases added).) The court concluded that *"even though the Court has the power to depart, based upon disparity, and other factors, or disparity unto itself, if it's really extraordinary, I don't think it's appropriate in this case."* (Tr. 18 (emphasis added).) Because a district court's exercise of its assumed discretion to deny a departure is not appealable, we dismiss Mitchell's appeal for lack of appellate jurisdiction.

■ We are constrained to note, however, that the district court erred insofar as it stated that it had authority to depart based on differences between the sentences applicable to Mitchell and Moodie, given that that disparity resulted from the plea bargaining process and was not unconstitutional. The lack of authority to depart in such a circumstance is well established under the principles, based on longstanding Supreme Court precedent, discussed in *United States v. Stanley,* 928 F.2d 575 (2d Cir.1991) (reversing departure designed to reduce disparity between sentence applicable to a defendant who was charged under § 924(c) because he chose to go to trial and sentences applicable to defendants not so charged because they pleaded guilty), and *United States v. Bonnet–Grullon,* 212 F.3d 692, 706–08 (2d Cir.2000) (affirming refusal to depart, for lack of authority, to reduce disparity between defendants in different judicial districts who were subject to different penalty levels because of prosecutorial decisions as to what offense to charge in order to induce a plea of guilty).

In *Bonnet–Grullon,* we noted that "[i]t is well established that the decision as to what federal charges to bring against any given suspect is within the province of the Executive Branch of the government." 212 F.3d at 701; *see also id.* at 707 (Guidelines "policy statements and comments give express recognition to the fundamental premise that prosecutors have broad discretion as to which charges to bring and which to omit").

> This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.

*Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). In *Bonnet–Grullon,* we observed that "[p]rosecutorial discretion in the decision as to which charges to bring and which to forgo, resting on assessments of the factors discussed in *Wayte, .e.g.,* the government's priorities and overall enforcement plan, is also integral to the plea-bargaining process." 212 F.3d at 701.

In *Stanley,* this Court considered "whether the sentencing judge may depart downward from the guideline range because of a disparity in sentence between defendants who have engaged in similar conduct but are charged with different offenses as a result of plea-bargaining decisions by the prosecutor." 928 F.2d at 576. The district court departed downward "because of what he perceived as an unwarranted disparity in sentences caused by the use of § 924(c) in plea negotiations," *id.* at 576, to wit, that the United States Attorney "often charges defendants who refuse to plead guilty with § 924(c) if the section is applicable, but allows similarly situated defendants who plead guilty to avoid § 924(c) charges, *i.e.,* it 'is not unusual' that § 924(c) is used 'as a chip in plea bargaining,'" *id.* at 579.

This Court reversed the departure, noting that so long as the government's

choices of what charges to press against which defendants are not based on constitutionally impermissible standards such as " 'race, religion, or other arbitrary classification,' " the government's " 'desire to induce a guilty plea' . . . is not an 'unjustifiable standard' of selection in enforcement." *Id.* at 581 (quoting *Bordenkircher v. Hayes,* 434 U.S. 357, 364–65, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)). We concluded that where

> the only "mitigating circumstance" identified [wa]s the fact that defendants who engaged in similar conduct but agreed to plead guilty to lesser charges received less punishment than Stanley would receive, . . . . [and where there was] no viable claim before us of misconduct by the prosecutor or coercion of the defendant,

the imposition of the mandatory sentence required for a § 924(c) conviction does not create an unwarranted disparity with the sentences of those not so convicted. *Stanley,* 928 F.2d at 582–83.

The present case differs from *Stanley* principally in that in *Stanley,* the preferential treatment consisted of not charging compliant defendants under § 924(c), whereas here, a § 924(c) charge was brought against Moodie and was dropped. Where the government has discretion to bring or not to bring diverse charges against different defendants for the purpose of plea bargaining, it also has discretion to pursue or not to pursue different charges, once brought, against different defendants for that purpose. We see no authority for the proposition that the government's permissible agreement to drop a given count against one defendant empowers the court to grant a downward departure to a codefendant who agrees to plead guilty to that count.

With respect to the events and plea agreements at issue here, Mitchell has not pointed to anything in the record to indicate that the government's decision to allow Moodie to plead guilty only to counts 3–5, while insisting that Mitchell plead guilty to count 2 as well as counts 3–5, was based on any invidious standard. To the contrary, the record supports the government's contention that testimony by Pullen portrayed Mitchell, both in general and in several segments of the crime spree, as the leader of the group. (*See, e.g., United States v. Moodie,* # 01–CR–82, Sentencing Hearing, December 17, 2002, at 12, 17–18, 20–23.) Nor is there any dispute that the government's trial evidence against Moodie would have lacked testimony by Mitchell, who refused to testify, and lacked any confession by Moodie, whereas at a trial of Mitchell, the government could have presented not only testimonial and physical evidence but also "[Mitchell's] complete and 'Mirandized' confession," making Mitchell's conviction "a foregone conclusion" (Mitchell brief on appeal at 6 n. 1). We conclude that Mitchell made no showing that would have authorized the district court to interfere with the government's discretion as to what charges to pursue and what charges to abandon for the purpose of persuading Moodie and Mitchell to plead guilty.

Accordingly, even if the district court had denied Mitchell's motion for a downward departure based on a sentencing disparity on the ground that it had no authority to grant such a motion, we could have affirmed under the authority of *Stanley* and *Bonnet–Grullon.* The court's statement that it had authority to depart for "disparity unto itself, if it's really extraordinary" was correct insofar as it meant that unconstitutional disparities could support downward departures. But to the extent that permissible prosecutorial policy and practice were the bases of Mitchell's motion, it would be error under *Stanley*

and *Bonnet–Grullon* for a district court to state that it had any authority to depart downwardly to correct resulting disparities. As such an error was not the basis for the court's denial of Mitchell's departure motion, we dismiss the appeal for lack of appellate jurisdiction.