United States v. Letcher

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of February, two thousand sixteen.

PRESENT: DENNIS JACOBS,
         DENNY CHIN,
         CHRISTOPHER F. DRONEY,
                     Circuit Judges.

- - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,
         Appellee,

         -v.-                                    14-4634

RYAN LETCHER,
         Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - -X

FOR APPELLEE:              RAJIT S. DOSANJH (Tamara B. Thomson, on the brief), Assistant United States Attorneys, for Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, New York.

**FOR APPELLANT:** BRUCE R. BRYAN, Syracuse, New York.

Appeal from a judgment of the United States District Court for the Northern District of New York (McAvoy, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED.**

Ryan Letcher appeals his conviction, after jury trial before the United States District Court for the Northern District of New York (McAvoy, J.), for knowingly and willfully making a false writing knowing it to contain a materially false, fictitious, and fraudulent statement in violation of 18 U.S.C. § 1001(a)(3). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

At the time of the offense conduct, Letcher was an employee of BAE Systems, a Department of Defense ("DOD") contractor. Letcher composed and mailed a letter to Defense Security Service, a DOD agency, that falsely asserted that Letcher's co-worker "Paul Heiland at BAE Systems in Johnson City, NY is Foreign Intelligence." App'x at 276. Letcher argues that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that Letcher knew that the statement ("Paul Heiland . . . is Foreign Intelligence") was false.

On a sufficiency challenge, we view the evidence in the light most favorable to the government, and draw all reasonable inferences in its favor. United States v. Burden, 600 F.3d 204, 214 (2d Cir. 2010); United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000). Viewed in this light, the evidence is sufficient to support Letcher's conviction.

FBI Agent David Schutz investigated the allegation made in Letcher's letter and interviewed Letcher in the course of his investigation. Schutz testified at trial that he asked Letcher numerous times whether Letcher had any evidence that Heiland was a foreign intelligence officer, or participating

in espionage or treason,[1] and whether Letcher had any logical reason for such a belief; Letcher provided no information and offered only a vague claim that "things weren't adding up."  App'x at 170, 267.

In the interview, Letcher expressed "anger and . . . disdain" toward Heiland, and appeared "obsessed" with discussing their workplace conflicts.  App'x at 151. Letcher was particularly upset about his exclusion from a patent application on which Heiland and other employees were working; he told Schutz that this exclusion was "the catalyst that prompted him to send the letter."  Id.  Schutz testified that Letcher claimed Heiland was "trying to sabotage his career," and that Letcher admitted "the reason he sent that [letter] was his disdain" for Heiland.  App'x at 151, 153.

Both Heiland's and Letcher's trial testimony corroborated that Letcher had been upset about the project that involved the patent application.[2]  Heiland testified that management had rejected Letcher's approach to the project, and Letcher then requested to leave the team. Letcher testified that he believed it was Heiland's fault that Letcher had not received credit on the application or the $800 bonus associated with a patent invention.  Letcher lodged an official complaint with the employer that Heiland was getting credit for Letcher's work.

---

[1] As used in BAE Systems security training, which Letcher attended annually, "Foreign Intelligence" referred to a foreign government or terrorist organization--someone "not acting on behalf of the United States"--seeking U.S. technology or defense information.  App'x at 51, 124-25.

[2] At the close of the prosecution's case, Letcher moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a).  The court denied the motion. Letcher testified in his own defense; he then renewed his Rule 29 motion, which the court again denied.  Accordingly, we may consider Letcher's sufficiency challenge based on the entire trial record, including his defense case.  See United States v. Velasquez, 271 F.3d 364, 371-72 (2d Cir. 2001); see also United States v. Aulicino, 44 F.3d 1102, 1114 (2d Cir. 1995).

3

Additionally, there was substantial evidence presented regarding the steps Letcher took to conceal his identity. The evidence was introduced through Agent Schutz's testimony as to Letcher's prior statements, Letcher's own testimony on cross-examination, and testimony by forensic examiners. Letcher waited until he was alone at the office; he inserted a single page into the middle of an existing 30-to-40-page document, then separated out that single page and typed the accusation on it; he printed the new document from behind a firewall so it "would be less scrutinized by any systems administrator," App'x at 150; and he made sure no temporary file remained on the computer when he was done. Letcher prepared the envelope address label in the same manner, and took home the label template and burned it. The envelope contained no postage or return address. The evidence also suggested that Letcher took care to wear gloves when handling the document and to avoid licking the envelope: the fingerprint examiner was unable to detect Letcher's prints on the letter or envelope; and Letcher's DNA was undetectable on the envelope, which required moisture for sealing.

It would have been reasonable for the jury to find from Letcher's failure to provide any specific explanation for his purported belief that Heiland was "Foreign Intelligence" that he did not in fact have such a belief. It would have been reasonable for the jury to find, based on (inter alia) Letcher's statements to Schutz, that Letcher was motivated by spite, and sought to harm Heiland's reputation and career to avenge Heiland's (perceived) sabotage of Letcher's own career. And it would have been reasonable for the jury to infer from this motivation that Letcher did not believe Heiland to be a foreign agent, and knew that his statement to that effect was false.[3] See United States v. MacPherson,

---

[3] The jury was free to reject as noncredible Letcher's explanations--for example, that Letcher had believed Heiland excluded him from the patent project in order to discredit Letcher at work, possibly because Heiland thought Letcher was "on to him"; and that this in turn led Letcher to believe Heiland "could possibly be foreign intelligence." App'x at 192, 198. See United States v. Frampton, 382 F.3d 213, 221 (2d Cir. 2004) ("It is well-established that the evaluation of witness credibility is a function of the jury . . . ." (citation omitted)); see also United States v. Stanley, 928 F.2d 575, 577 (2d Cir. 1991) ("[T]he jury was

424 F.3d 183, 189-90 (2d Cir. 2005) ("The law . . . recognizes that the <u>mens rea</u> elements of knowledge and intent can often be proved through circumstantial evidence and the reasonable inferences drawn therefrom."); <u>id.</u> at 185 n.2 ("[E]vidence of motive . . . is a factor that a jury may weigh in considering whether the totality of the circumstances permits it to infer guilty knowledge . . . beyond a reasonable doubt.").  The jury could have also reasonably inferred that the extensive steps Letcher took to avoid being connected to the letter signaled consciousness of guilt (in this context, awareness that the statement was false), particularly when contrasted to Letcher's history of lodging signed complaints at BAE Systems.

For the foregoing reasons, and finding no merit in Letcher's other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

---

entitled to disbelieve [the defendant's] testimony, and use its disbelief to supplement the other evidence against him.").