Harold FLOYD, Appellant (Defendant and Intervenor Below),

The Aetna Casualty & Surety Company, (Defendant Below),

v.

JAY COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION, Appellee (Plaintiff Below).

No. 3–1275A282.

Court of Appeals of Indiana, Fourth District.

June 18, 1980.
Rehearing Denied July 18, 1980.

Jerrald A. Crowell, Bowman, Crowell & Swihart, Fort Wayne, for appellant; Christina McKee, Fort Wayne, of counsel.

J. A. Bruggeman, Barrett, Barrett & McNagny, Fort Wayne, for Aetna Cas. & Sur. Co.

John E. Hoffman, Hoffman, Moppert & Solomon, Fort Wayne, John Coldren, Coldren & Frantz, Portland, for appellee.

YOUNG, Judge.

This action was initiated by the plaintiff-appellee, the Jay County Rural Electric Membership Corporation, (hereinafter REMC), against the Aetna Casualty & Surety Company seeking recovery on a comprehensive dishonesty, disappearance and destruction bond for the period of time from 1948 to 1965, alleging fraudulent and dishonest acts committed by the REMC's general manager, the appellant Harold Floyd. Floyd was granted permission to intervene and filed a claim against the REMC for damages resulting from false and fraudulent representations of his dishonesty. The REMC answered in denial, and added a paragraph of complaint against Floyd. The paragraph alleged that Floyd was indebted to the REMC for funds expended by Floyd for his personal use, personal property of the REMC which Floyd had taken for his personal use, excess salary, payment of Floyd's personal expenses, and for work performed by REMC employees on Floyd's personal residence.

At the close of the REMC's case the trial court found that the REMC's directors had sufficient awareness of possible wrongdoings to obligate them to further inquiry and that their failure to inform Aetna released it from liability on the bond. At the close of all the evidence, the trial court found in favor of the REMC and entered judgment against Floyd, ordering him to pay $44,420.54 in principal and interest.

## I.

Floyd's first contention is that the trial court erred in admitting evidence

which contradicted the corporate minutes of the REMC. Floyd points out that the corporate minutes show three resolutions authorizing certain types of expenditures and a general clause for each meeting indicating that the board of directors had read and approved a list of checks written during the previous month. He relies on *Jones v. State*, (1960) 240 Ind. 230, 163 N.E.2d 605. That case is inapplicable, however, because it involved a public corporation. With respect to private corporations, IC 1976, 23–1–12–1, provides that originals or copies of corporate minutes are admissible as *prima facie* evidence of directors meetings. *Prima facie* does not mean conclusive. Definitions of the term imply that such evidence may be contradicted. *See, e. g., Johnson v. State*, (1972) 258 Ind. 648, 283 N.E.2d 532 (*prima facie* evidence is that which is "sufficient to establish a given fact and which will remain sufficient if uncontradicted."); *Rene's Restaurant Corp. v. Fro-Du-Co Corp.*, (1965) 137 Ind.App. 559, 210 N.E.2d 385 (same). Many jurisdictions hold that corporate minutes are only *prima facie* evidence of what happens at a directors' meeting, not conclusive, and that oral evidence is admissible to contradict the written records. *Cox v. First National Bank*, (1935) 10 Cal. App.2d 302, 52 P.2d 524; *Lewis v. People*, (1936) 99 Colo. 102, 60 P.2d 1089; *Hopewell Baptist Church v. Craig*, (1956) 143 Conn. 593, 124 A.2d 220; *Mason Hall Corp. v. Dicker*, (1965) D.C.Mun.App., 141 A.2d 190; *Silver Bowl, Inc. v. Equity Metals, Inc.*, (1970) 93 Idaho 487, 464 P.2d 926; *Graham v. Fleissner's Executors*, (1931) 107 N.J.L. 278, 153 A. 526; *KoEune v. State Bank*, (1939) 134 Pa.Super. 108, 4 A.2d 234.

 Objections to parol evidence concerning directors' meetings are usually based on either the best evidence rule or the rule excluding evidence of prior or contemporaneous oral agreements at variance with existing valid written contracts. Annot. 48 A.L.R.2d 1259 (1956). The first is irrelevant to this case because all the relevant

documents were in evidence, and the second, if applicable,[1] makes exception for proof of fraud. *Hines v. Driver*, (1880) 72 Ind. 125. A principal's knowledge of all material facts is indispensable to ratification of an agent's unauthorized acts. *Hutter v. Weiss*, (1961) 132 Ind.App. 244, 177 N.E.2d 339. Thus, even if the corporate minutes were conclusive evidence that the directors approved Floyd's expenditures, evidence of Floyd's fraud would be admissible to show that the approval was insufficient to ratify Floyd's unauthorized acts because the directors were unaware of material facts.

The trial court committed no error in hearing evidence outside the corporate minutes of what transpired at the directors' meetings.

## II.

Floyd's second contention of error is that the award of damages was not supported by evidence of probative value. Specifically, Floyd contends that the charge against him for the use of REMC employees on construction of his home was based on speculation as to the exact amount of time each worked on his home.

 Evidence of loss is not objectionably uncertain if it is sufficient to enable the fact-finder to make a fair and reasonable finding. Less certainty is required to prove the *amount* of loss than the fact that some loss occurred. *Kroger v. Haun*, (1978) Ind.App., 379 N.E.2d 1004, 1017. On appeal, uncertainty as to the exact amount of damages is resolved against the wrongdoer: "justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong created." *Charlie Stuart Oldsmobile, Inc. v. Smith*, (1976) Ind.App., 357 N.E.2d 247, 252, quoting *Bigelow v. R. K. O. Radio Pictures, Inc.*, (1945) 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652. There is evidence in the record that Floyd instructed the REMC employees working on his home to bill their time to

---

1. It has been held that corporate minutes do not constitute a written instrument in the sense used with relation to the parol evidence rule. *Combs v. Lufkin*, (1979 Ariz.App.) 598 P.2d 1029; *Boone v. Hall*, (1950) 100 Cal.App.2d 738, 224 P.2d 881.

power use or meter room. Thus, uncertainty as to the number of hours worked by these men appears to be a direct result of Floyd's concealment. There is no uncertainty that they did a substantial amount of work for Floyd on REMC time, to which two testified in some detail.

Schedule E, sub-exhibit K, is a breakdown of the amount charged to Floyd by the REMC for use of REMC employees based on the employees' estimates of time expended and their hourly wage as determined from the REMC records. Only two of the employees testified. The court allowed substantially less than the REMC prayed for. It is apparent that the trial court arrived at the figure it did by allowing recovery only for the two employees who testified. The court used the hourly wage according to Schedule E with estimates of time made by the employees while testifying. The second was unable to estimate the amount of time he spent altogether. The trial court apparently arrived at an estimate on the basis of what witness's description of each job he undertook and the approximate amount of time necessary to complete it. The trial court consistently used the low range of the estimates. We have no difficulty in finding that the trial court was fair and reasonable in computing this aspect of the REMC's damages.

■■■ Floyd also argues, under his second contention of error, that the evidence of long distance phone calls for his personal use was based on hearsay. The REMC offered into evidence a chart of phone calls showing locations from which and to which the calls were placed, the cost, the account number charged, and in some cases, names. The auditor who compiled the chart testified that REMC employees informed him that some of the names were those of Floyd's relatives. On cross-examination, Floyd himself specifically identified some of the names as those of his relatives. Thus, error in admitting the auditor's testimony on this point was harmless. The trial court did sustain a hearsay objection to the chart itself, after which the auditor testified that it was based solely on records and

telephone bills of the REMC. He had checked every phone call he could find a record of, both in and out of the REMC customer area, and listed all calls for which he could find no evidence of a business purpose. The chart was properly admitted upon this foundation. Indiana has long recognized the voluminous records exception to the hearsay rule. The evidence must be based on an examination of records which might themselves be properly admitted into evidence and which are available to the opposing party. Any qualified person who has examined them may testify as to the result of his examination. The rule is particularly applicable where the ultimate fact to be ascertained must be the result of a calculation involving many transactions and numerous amounts. *Cleveland, C., C. & St. L. Ry Co. v. Woodbury Glass Co.*, (1918) 80 Ind.App. 298, 120 N.E. 426, 433.

### III.

■■■ Floyd's third contention of error groups four sections from his motion to correct errors. The first two are that the trial court's decision is not supported by sufficient evidence and contrary to the evidence, and contrary to law. The statement of facts and grounds in support of these contentions is an argumentative and incomplete statement of the facts. Floyd's appellants brief expands this by arguing the sufficiency of evidence with respect to items not mentioned either in the specifications of error or the statement of facts and grounds. These issues may not be considered on appeal. Ind. Rules of Procedure, Trial Rule 59(G).

■■■ We do not believe the first two specifications meet the formal requirements of Trial Rule 59(B). We may consider them waived. *Meeker v. Robinson*, (1977) Ind. App., 370 N.E.2d 392. Even did we not, Floyd's arguments are without merit. For instance, Floyd claims that the trial court erroneously interpreted the directors resolutions as limiting Floyd to $1000.00 per year for making movies. His references to the record are incomplete however. The witnesses he mentions all testified that they

assumed he was reimbursing the difference, if any, or that he would spend less the following year. In no way did they indicate that there was in fact no limit. The evidence that Floyd neither reimbursed the difference nor spent less in the following years, and in fact concealed the amounts spent for this purpose, justifies the trial court's order that Floyd now repay the excess accumulated over the years.

Floyd argues that there was no evidence indicating that the purchase of a tire and gasoline by his wife was not made for the benefit of the REMC. However, the present Manager of the REMC testified on rebuttal that the REMC never owned a 1964 Chevrolet and that Floyd did. Floyd argues that the testimony regarding payment of insurance premiums for his father was vague, indefinite and based on hearsay, yet at trial Floyd identified Armoni Floyd as his father and claimed to have the check by which he reimbursed the REMC. Such a check was not produced.

The remaining allegations of error under this section are that the trial court did not take into consideration the value of Floyd's personal tractor which he traded in on the tractor with respect to which Floyd was charged, and that the trial court failed to find that all of Floyd's expenditures were ratified by the Board of Directors by virtue of their approval of monthly lists of expenditures.

With regard to the first, the trade-in value is irrelevant. The money with which Floyd is charged was the REMC's share of the purchase price. The present manager of the REMC testified that Floyd never returned the tractor.

■■■■ With regard to the latter, we repeat that ratification cannot be effective where material facts are concealed, *Hutter v. Weiss, supra,* 177 N.E.2d 339, and that the directors had no authority in the first place to allow Floyd's use of REMC re-

sources in the manner he did. IC 1976, 23–7–1.1–15. *See infra,* footnote 2.

## IV.

■■■■ Floyd's fourth contention of error involves the trial court's award of prejudgment interest. He argues that interest could only run from the date of an itemized demand of payment and that the REMC failed to prove the date of any such demand. He relies on IC 1976, 24–4.6–1–103(b), which provides:

Interest at the rate of eight percent (8%) per annum shall be allowed:

(a) . . . ;

(b) And from the date an itemized bill shall have been rendered and payment demanded on an account stated, account closed or for money had and received for the use of another and retained without his consent.

Floyd argues further that in the event the above statute does not apply in the present situation to authorize an award of interest, interest is improper even as an element of compensatory damages because the damages were not sufficiently ascertainable prior to trial under the rule of *New York, Chicago and St. Louis Railway Co. v. Roper,* (1911) 176 Ind. 497, 96 N.E. 468.

We do not believe that the above-cited interest statute is applicable in this case. As noted in regard to the predecessor statute, "[I]t may be conceded that the Indiana statute regulating interest deals only with judgments and matters arising out of contract . . . ." *New York, Chicago and St. Louis Railway Co. v. Roper, supra.* See *Lindenborg v. M. & L. Builders and Brokers, Inc.,* (1973) 158 Ind.App. 311, 302 N.E.2d 816. It is patent from the record of proceedings and the trial court's findings that the central issue in this case was the question of Floyd's fraud.[2] *See Terrell v. Butterfield,* (1883) 92 Ind. 1.

---

2. The parties mistakenly have referred to Floyd's indebtedness as an account receivable. At no time during Floyd's employment was the REMC empowered to make anything in the nature of a loan to him. Burns Ann.Stat. § 25–520, Acts 1935, ch. 157 § 14, presently codified at IC 1976, 23–7–1.1–15: "No corporation shall make any advancement for services to be performed in the future or shall make any loan of money or property to any officer or director of the corporation."

The parties agree, correctly, that the statute is not the exclusive source of authority for awarding pre-judgment interest: "while interest eo nomine may not be allowed in the absence of a statutory provision, it may be assessed as damages where the statute is silent." *New York, Chicago and St. Louis Railway Co. v. Roper, supra*, 96 N.E. at 471.

Historically prejudgment interest has been a proper element of damages in cases involving wrongful procurement and retention of money. *Wayne Pike Co. v. Hammons*, (1891) 129 Ind. 368, 27 N.E. 487; *Hazzard v. Duke*, (1878) 64 Ind. 220. See Note, Prejudgment Interest: An Element of Damages Not to be Overlooked, 8 Cumb. L.Rev. 521 (1977). Usually interest would accrue from the time the money came into the wrongdoer's hands with no necessity of demand. *See e. g. Bunger v. Roddy*, (1880) 70 Ind. 26 (Where a complaint for money had and received alleges an actual conversion, no demand is necessary); 3A W. Fletcher, Cyclopedia of the Law of Private Corporations, ch. 11 § 1109, p. 150 (1975). *See generally* Annot. 171 A.L.R. 816 (1947). The reasoning in support of this rule was aptly stated in *Manufacturers' Nat. Bank v. Perry*, (1887) 144 Mass. 313, 11 N.E. 81, in which a bank sued to recover money wrongfully obtained and fraudulently retained by the defendant. The court found that the concealment was a fraud preventing demand and that the defendant should not profit by it. "To hold otherwise would be to permit the defendant to secure the free use of the plaintiff's money so long as the fraud was successful." 11 N.E. at 82.

Floyd argues however that prejudgment interest is yet improper in this case, according to the rule set out in *New York, Chicago and St. Louis Railway Co. v. Roper, supra*. In *Luksus v. United Pacific Ins. Co.*, (7th Cir. 1971) 452 F.2d 207, 210, the *Roper* test was described as follows:

> The test, the Court said, was whether injury and consequent damage was complete, must be ascertained as of a particular time in accordance with fixed rules of evidence and known standards of value, which a Court or jury must follow in fixing the amount, as distinguished from using one's best judgment to assess the amount for past and future injury or elements not measurable by fixed standards of value.

Floyd has confused ascertainable damages with ascertainable liability, however. The essence of this suit is the claim that over a period of years Floyd continually drew on REMC funds for his own use. After determining liability in a multitude of separate incidents, the trier of fact had only to add the sums of money involved in each to determine damages. This calls for no exercise of judgment, merely computation. We cannot imagine a better case for allowing pre-judgment interest.

Floyd argues further that it is inequitable to charge him with interest during the time that the trial court held the case under advisement. He concedes that he did not avail himself of the remedy provided in Trial Rule 53.2(A) for matters held under advisement longer than ninety days.

Prejudgment interest in this case is not a question of equity, but an element of compensatory damages. *New York, Chicago and St. Louis Railway Co. v. Roper, supra*, 96 N.E. at 471. Interest represents the value of the use of money. Prejudgment interest in this case compensates the REMC for the loss of use of those funds which Floyd converted. This loss of use continued during the time the trial court held this case under advisement. If that time seemed long, Floyd's remedy lay in Trial Rule 53.2(A). We also note that this argument does not appear in Floyd's motion to correct errors. No objection was made or preserved for review regarding this issue.

Floyd has failed to demonstrate error in the trial court's finding of liability. The same evidence supports the trial court's finding of no malice in the filing of the claim with the bonding company. The trial court's decision in favor of the REMC on Floyd's counterclaim is not contrary to law.

We affirm.

MILLER, P. J., and CHIPMAN, J., concur.