**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Richard YARBOUGH, Defendant–Appellant.**

**No. 94–2091.**

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1995.

Decided May 19, 1995.

Richard H. Lloyd, Asst. U.S. Atty., Criminal Div., Fairview Heights, IL, for U.S.

Terence Niehoff (argued), St. Louis, MO, for defendant-appellant.

Before ALDISERT,* EASTERBROOK, and ROVNER, Circuit Judges.

ROVNER, Circuit Judge.

Richard Yarbough was convicted by a jury of seven drug and two weapons charges. The district court labeled him a career offender under section 4B1.1 of the Sentencing Guidelines and imposed an imprisonment term of 322 months. Yarbough does not challenge that sentence in this appeal but instead raises two arguments addressed to his many convictions. First, Yarbough contends that the district court should have dismissed six of the nine charges in the second superseding indictment because the government brought those charges solely for vindictive reasons. Yarbough then argues that all nine convictions should be reversed and a new trial granted because the district court declined to give his proposed jury instruction on addict-informants. Finding both argu-

_____

* The Hon. Ruggero J. Aldisert, of the Third Circuit, sitting by designation.

ments lacking in merit, we affirm Yarbough's convictions.

## I. BACKGROUND

The government's case against Yarbough depended in large measure on the cooperation of Joseph Mitchell. Mitchell was an intermittent heroin user who had purchased the drug from Yarbough in East St. Louis, Illinois on at least six or seven occasions prior to the events at issue here. Mitchell learned in December 1992 that Yarbough was selling narcotics in East St. Louis out of an apartment located at 588 North 23rd Street, and he provided this information to Dennis Butler, an undercover officer. Mitchell told Butler that he had purchased heroin from Yarbough in the past and that he could do so again in the future. Thus, on December 17, 1992, Butler took Mitchell to the 23rd Street address. Butler and the other officers who accompanied them searched Mitchell, took all the money in his possession, and then supplied Mitchell with $30. As the officers watched from the street, Yarbough knocked on the door of the 23rd Street apartment. Mitchell used his street name to identify himself, and Yarbough then opened the door, allowing Mitchell to enter the hallway. Mitchell indicated that he wanted $10 worth of heroin and $20 worth of cocaine base, and Yarbough sold him the requested amounts from small plastic bottles that were attached to his waist. With the drugs in hand, Mitchell left the apartment and went directly to Butler's automobile, where he turned the drugs over to Butler.

Mitchell made similar purchases from Yarbough at the 23rd Street address on December 30, 1992, and January 12, 1993. On each occasion, Butler and two or three other officers accompanied Mitchell to the apartment, searched him, provided him with $30, and then watched from the street as Mitchell went to the door. Yarbough would allow Mitchell to enter the hallway and then would sell him the requested amounts of heroin and cocaine base. Upon leaving the apartment, Mitchell would turn the drugs over to Butler.

On January 14, 1993, two days after Mitchell's last purchase, Butler and members of the Illinois State Police Tactical Response Team went to the 23rd Street address to execute a search warrant. Butler first knocked on the apartment's door, and when a male voice told Butler to identify himself, Butler gave a fictitious name and asked to see a man who allegedly lived in the apartment. When he was told that the man did not live there, Butler motioned for the Tactical Response Team to execute the warrant. The officers used a battering ram to enter the building through the downstairs door, climbed the stairs at the end of the hallway, and found Yarbough on a couch in the upstairs apartment. They took Yarbough into custody, and one of the officers then lifted a blanket that was next to where Yarbough had been seated on the couch and found a fully loaded .38 caliber revolver. The officers also found a police scanner and a plastic bag filled with foil-wrapped heroin packets. In searching Yarbough, the officers found a key that opened the lock on the apartment's front door.

Yarbough subsequently was charged with the December 17, December 30, and January 12 cocaine and heroin sales to Mitchell, and with possessing the heroin found in the apartment on January 14 with the intent to distribute it. He also was charged under 18 U.S.C. § 924(c) with using or carrying a firearm during and in relation to a drug trafficking crime, and with the possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1). A jury subsequently convicted Yarbough on all charges.

## II. DISCUSSION

### A.

■ Yarbough first contends that the district court erred in declining to dismiss six counts of the second superseding indictment that were added only after Yarbough withdrew his earlier guilty plea. The additional charges, in Yarbough's view, were the product of prosecutorial vindictiveness occasioned by his exercise of the right to withdraw his plea and to proceed to trial. Yarbough maintains that the addition of those charges therefore violated the principles of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct.

2072, 23 L.Ed.2d 656 (1969), and subsequent cases.

The original indictment charged Yarbough with only three offenses: (1) a possession offense under 21 U.S.C. § 841(a)(1); (2) a section 924(c) firearm offense; (3) and a felon in possession of a firearm offense under section 922(g)(1). On April 13, 1993, Yarbough pled guilty to the first two charges, and the government agreed to dismiss the third at the time of sentencing. Yet when Yarbough learned that his guilty plea might qualify him as a career offender under U.S.S.G. § 4B1.1, he moved to withdraw his plea. The government did not oppose Yarbough's motion, and the district court therefore allowed it on October 8, 1993, without assessing the merits of the motion. Approximately three months later, however, the government superseded its original indictment, adding five counts addressed to the sales of heroin and cocaine base to Mitchell on December 17 and December 30, 1992, and the January 12, 1993 sale of cocaine base. The government subsequently added the January 12 heroin sale in a second superseding indictment. Yarbough moved to dismiss that indictment on vindictiveness grounds, but the district court denied his motion, explaining that a presumption of vindictiveness would not apply to the prosecutor's pretrial charging decisions and that Yarbough had failed to show actual vindictiveness. In this appeal, Yarbough renews the argument that a presumption of vindictiveness should apply, but we agree with the district court that such a presumption is unwarranted here.

In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court considered whether the Constitution prohibits a trial judge from imposing a harsher sentence on a criminal defendant after a retrial once that defendant has successfully appealed a conviction obtained in the initial trial. The Court held that neither the Double Jeopardy nor the Equal Protection Clause absolutely bars the harsher sentence. *Id.* at 723, 89 S.Ct. at 2079–80. Yet at the same time, the Court concluded that a harsher sentence shown to result from the vindictive motivation of a sentencing judge would violate due process. *Id.* at 725, 89 S.Ct. at 2080. To assure the absence of a vindictive motivation, then, the Court determined to apply "a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." *United States v. Goodwin,* 457 U.S. 368, 374, 102 S.Ct. 2485, 2489, 73 L.Ed.2d 74 (1982); *see also Wasman v. United States,* 468 U.S. 559, 565, 104 S.Ct. 3217, 3221, 82 L.Ed.2d 424 (1984). The purpose of this presumption, the Court said, is to free the defendant "of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Pearce,* 395 U.S. at 725, 89 S.Ct. at 2080.[1]

Yet the Supreme Court has never extended the *Pearce* presumption of vindictiveness to a pretrial charging decision by a prosecutor. The Court has instead concluded in a series of cases that such a presumption does not apply to prosecutorial decisions made pre- rather than post-trial. *See Goodwin,* 457 U.S. at 381–83, 102 S.Ct. at 2492–93; *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *see also Town of Newton v. Rumery,* 480 U.S. 386, 397 n. 7, 107 S.Ct. 1187, 1194 n. 7, 94 L.Ed.2d 405 (1987); *United States v. Napue,* 834 F.2d 1311, 1330 (7th Cir.1987). We explained in *United States v. Whaley,* 830 F.2d 1469, 1477 (7th Cir.1987), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988), for example, that "[a]lthough a prosecutor's decision to reindict a defendant following his successful post-conviction appeal is limited by the due process clause, his decision to lodge a superseding indictment prior to trial is less fettered." Indeed, in *Bordenkircher v. Hayes,* the Supreme Court upheld a prosecutor's right to make good on a threat during plea negotiations to seek additional charges if the defendant refused to enter a plea. 434 U.S. at 364–65, 98 S.Ct. at 668–69. And in *Goodwin,* the Court found no due process violation where the prosecutor filed more serious charges after the "initial expectation that a defendant would plead guilty to lesser

---

1. The Court has since held that the *Pearce* presumption would not apply where "the first sentence was based upon a guilty plea, and the second sentence follows a trial." *Alabama v. Smith,* 490 U.S. 794, 795, 109 S.Ct. 2201, 2202–03, 104 L.Ed.2d 865 (1989).

charges proved unfounded." 457 U.S. at 380, 102 S.Ct. at 2492.

The only feature distinguishing the present case from *Bordenkircher* and *Goodwin* is that Yarbough actually pled guilty but succeeded in withdrawing that plea before the superseding indictment was filed. It was thus the withdrawal of the plea, rather than the initial refusal to enter a plea, that allegedly prompted the additional charges. But we see *nothing in the Supreme Court's cases that would permit us to distinguish these situations under the Due Process Clause*. Even if a defendant initially entered a plea of guilty before successfully withdrawing that plea, he still, in essence, has refused the government's offer of a plea and has exercised his right to put the government to its proof at trial. *Goodwin* holds that such a circumstance "is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified" because "[a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." 457 U.S. at 382, 102 S.Ct. at 2493; *see also United States v. Taglia,* 925 F.2d 1031, 1033–34 (7th Cir. 1991) (no presumption of vindictiveness where the defendant received a harsher sentence than that called for in the plea agreement after successfully withdrawing his plea and proceeding to trial); *United States v. Cooks,* 52 F.3d 101, 105–106 (5th Cir.1995) (presumption does not apply where government sought career offender enhancement after withdrawal of guilty plea); *United States v. Stanley,* 928 F.2d 575, 579 (2d Cir.) (addition of firearm charge after withdrawal of guilty plea does not give rise to presumption of vindictiveness), *cert. denied,* 502 U.S. 845, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991).

Because a presumption of vindictiveness therefore does not apply to the additional charges in the superseding indictments, Yarbough was required to show that the government's charging decisions were motivated by actual vindictiveness. *See Wasman,* 468 U.S. at 569, 104 S.Ct. at 3223; *Whaley,* 830 F.2d at 1477. Yarbough did not attempt to make such a showing here but instead devoted all his energies to convincing us that the circumstances should give rise to a presumption of vindictiveness. Because we have concluded that they do not, Yarbough's prosecutorial vindictiveness claim must fail. *See Taglia,* 925 F.2d at 1035.

### B.

Yarbough next contends that we should reverse his convictions and order a new trial because the district court declined to give his proposed jury instruction on addict-informants. The proposed instruction was addressed to the testimony of Joseph Mitchell and provided as follows:

> If a witness who has cooperated with the Government is a user of narcotics, there are reasons his testimony should be considered with great care. A regular user of narcotics has a constant need for a supply of drugs and for money to support his habit and also may have an abnormal fear of imprisonment in which his supply of drugs might be cut off. Additionally, a witness who was under the influence of marijuana, cocaine or alcohol at the time of a particular event may have impaired recollection of that which occurred during that event. These are special circumstances which you may consider in weighing testimony of this kind. You, of course, may give the testimony such weight as you think proper after considering all relevant circumstances. 1 E. Devitt & C. Blackmar, § 17.03 (3d ed. 1977) [as modified by Yarbough].

The district court refused the instruction, explaining that the evidence did not establish that Mitchell was addicted to drugs during the events in question and that the proposed instruction was not an accurate statement of Seventh Circuit law. (Tr. vol. II, at 133.)[2]

---

2. Although Yarbough's proposed instruction addresses a "user of narcotics," the cited *Devitt & Blackmar* instruction actually applies to an informant who is a "narcotics addict." Yarbough apparently concedes on appeal that the instruction applies only to addicts, and not to users, as he argues here that the evidence showed Mitchell to be an addict.

A later edition of *Devitt & Blackmar* proposes the following instruction to address the testimony of a drug or alcohol abuser:

Yarbough contends in this appeal that the instruction should have been given because the evidence was sufficient for the jury to conclude that Mitchell in fact was a heroin addict. In assessing a challenge to the jury instructions in a criminal case, we consider the instructions as a whole; we will not overturn a conviction for instructional error so long as the instructions treat the contested issues fairly and adequately. *See United States v. Hoffman,* 957 F.2d 296, 298–99 (7th Cir.), *cert. denied,* 504 U.S. 960, 112 S.Ct. 2315, 119 L.Ed.2d 235 (1992); *United States v. Sims,* 895 F.2d 326, 329 (7th Cir.1990).

Our cases apply a four-factor test in assessing whether it was error to refuse an addict-informant instruction:

(1) was the informant an addict at the time of the trial, not when the alleged transactions occurred; (2) was [his] addiction subject to cross-examination; (3) was the jury instructed that the addict's testimony should be particularly scrutinized; and (4) was the addict's testimony corroborated.

*Hoffman,* 957 F.2d at 299; *United States v. Manganellis,* 864 F.2d 528, 543 (7th Cir. 1988); *see also United States v. Shigemura,* 682 F.2d 699, 702–03 (8th Cir.1982), *cert. denied,* 459 U.S. 1111, 103 S.Ct. 741, 74 L.Ed.2d 962 (1983). Our consideration of these factors in the instant case convinces us that the district court did not err in refusing the requested instruction.

The first factor—whether Mitchell was an addict at the time of the trial—is the subject of considerable debate between the parties. Yarbough points to Mitchell's testimony that he at one time had been addicted to heroin. Indeed, Mitchell testified that he first began using heroin in 1976 and that he continued to do so off and on until sometime in 1992. Mitchell maintained, however, that at the time he purchased heroin from Yarbough in 1992 and 1993, he was not using heroin every day or even every other day. Although Mitchell occasionally took heroin intrave-

nously during that period, he passed most of the heroin he purchased from Yarbough on to other users. Yarbough points as well to the fact that Mitchell twice was admitted to a residential drug treatment program, once prior to the events at issue in this case and the second time after Yarbough's arrest on the present charges. Mitchell testified in March 1994, however, that he no longer used heroin and had not done so since his release from the second residential treatment program, which Mitchell could only place as falling sometime between January 1993 and February 1994.

Mitchell's own testimony plainly established that he at least was a drug user at the time of the relevant transactions with Yarbough. Yet *Hoffman* and *Manganellis* ask not whether the informant was using drugs when the alleged transactions occurred, but whether he was an addict at the time of trial. *See Hoffman,* 957 F.2d at 299; *Manganellis,* 864 F.2d at 543. The proposed instruction speaks in terms of the addict who has an abnormal fear that his supply of drugs will be cut off if he is forced to go to prison or if he loses the income that goes along with serving as a government informant. If the informant is not an addict, and indeed is not even using drugs at the time of his trial testimony, it stands to reason that he would not then be subject to the same temptations that create a serious risk of perjured testimony. *See United States v. Rodgers,* 755 F.2d 533, 549 (7th Cir.) (discussing rationale for addict-informant instruction), *cert. denied,* 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 656 (1985); *United States v. Gregorio,* 497 F.2d 1253, 1261–62 (4th Cir.), *cert. denied,* 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974) (same). Mitchell testified that he no longer was using heroin at the time of trial, and Yarbough produced nothing to refute that statement. *See Hoffman,* 957 F.2d at 299; *Manganellis,* 864 F.2d at 543. Although Yarbough contends on appeal that

---

The testimony of a drug or alcohol abuser must be examined and weighed by the jury with greater care than the testimony of a witness who does not abuse drugs or alcohol. ———— may be considered to be an abuser of drugs or alcohol.

The jury must determine whether the testimony of the drug or alcohol abuser has been affected by drug or alcohol use or the need for drugs or alcohol.

1 E. Devitt & C. Blackmar, § 15.05 (4th ed. 1992). Yarbough did not ask the district court to give this instruction.

once an individual is addicted to a substance like heroin, he is addicted for life, Yarbough made no attempt to establish that fact through expert testimony at trial. *See Manganellis,* 864 F.2d at 544. The district court was thus not required to accept that supposition once Mitchell testified that he no longer was using heroin.

The second and third factors from *Hoffman* and *Manganellis* also are met here. Yarbough's counsel extensively cross-examined Mitchell about his drug use, and the district court placed no limitations on the scope of counsel's questioning. Indeed, counsel was able to bring out during cross-examination that Mitchell had been taking heroin intravenously in late 1992. *Cf. Manganellis,* 864 F.2d at 544 (counsel precluded from cross-examining witness as to whether she injected herself with cocaine). Counsel was therefore able to argue in closing that the jury should reject Mitchell's testimony because of his heavy involvement with drugs. (*See* Tr. vol. III, at 12–14.) Moreover, the district court instructed the jury that Mitchell's testimony should be considered "with caution and great care":

> You have heard testimony that Joe Mitchell has received benefits from the government in connection with this case.
>
> You may give his testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

The court also told the jury that:

> You are the sole judges of the credibility of the witnesses, and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his or her intelligence, his or her ability and opportunity to observe, his or her age, his or her memory, his or her manner while testifying, any interest, bias or prejudice he or she may have, and the reasonableness of his or her testimony considered in the light of all the evidence in the case.

These instructions, especially the first one, were sufficient to inform the jury that Mitchell's testimony should be particularly scrutinized. *See Hoffman,* 957 F.2d at 299.

Finally, Yarbough maintains that Mitchell's testimony was not corroborated because Mitchell was alone in the apartment when the transactions occurred. Granted, no other witness could testify as to whether it was Yarbough who sold drugs to Mitchell on December 17, December 30, and January 12, but the circumstantial evidence provides strong support for Mitchell's account. First, prior to the three sales, Mitchell told Agent Butler that Yarbough was selling drugs out of the 23rd Street apartment. After each transaction, moreover, Mitchell emerged from the apartment and immediately turned cocaine base and heroin over to Officer Butler, telling Butler that he had purchased the drugs from Yarbough. Two days after the final transaction, officers executing a search warrant for the apartment found Yarbough seated on a couch inside. They also found a loaded .38 caliber revolver under a blanket next to where Yarbough had been seated. A subsequent search of the apartment revealed a police scanner and a number of packets of heroin. The officers also took a key chain from Yarbough that included a key to the apartment's front door.

In light of all of these circumstances, it was not error for the district court to refuse Yarbough's proposed instruction on addict-informants.

AFFIRMED.