**In re David A. VISSER, Debtor.**

**Bankruptcy No. 98–38132 RCM–13.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

March 23, 1999.

Joseph Colvin, Fort Worth, TX, for Wells, Felber, Purcell and Kraatz.

Charles R. Chesnutt, Dallas, TX, for Debtor.

## MEMORANDUM OPINION ON MOTION TO DISMISS

ROBERT McGUIRE, Chief Judge.

On March 16, 1999, came on to be heard the motion of Wells, Felber, Purcell and Kraatz, a law firm ("Wells"), to dismiss on § 109(e) eligibility grounds.[1] The issue involved is whether the Wells claim is a "liquidated" debt within the meaning of § 109(e). For the reasons hereafter stated, such motion is granted and this case will be dismissed unless David A. Visser ("Debtor") converts to another chapter within seven days of entry of a final order on this opinion.

On February 13, 1998, Debtor filed a petition under the Bankruptcy Code requesting relief in accordance with chapter 13 of title 11 of the United States Code.

Wells has a proof of claim in these proceedings in the sum of $272,546.71, exclusive of attorney fees. In live testimony, Wells reduced its claim to $263,955.20. Wells filed its claim in its own name, but on behalf of itself and its subrogee, Fidelity & Deposit Company of Maryland ("Fidelity Company"). (Wells Exhibit 10.)

Debtor never objected to the Wells claim,[2] and in his final plan he proposed to pay Wells on its filed claim of $272,546.71. Under the plan, the unsecured are to receive approximately 3% of their claims consisting of $170 per month for sixty months, or $10,200. Debtor's position was that the payment was the best he could do

and he realized 3% was a small amount on Wells' claim whether it was $160,000 or $272,000, and that is the reason he made no objection to the Wells claim.

Debtor had been employed for 8½ years by the firm of Wells, Felber, Purcell and Kraatz and/or its predecessor law firm, with certain accounting and management duties. While in such employ, a certain level of trust was developed between David Visser and the principals of the law firm.

Debtor resigned from the law firm on or about May 14, 1997.

Debtor admitted that he had misappropriated funds from the law firm's IOLTA Trust Account as well as the law firm's trust account.

Debtor has destroyed records of the law firm in connection with the misappropriation of funds from such law firm. Since the initial destruction of such records, Debtor has been cooperating with Wells in attempting to assist in recovering the moneys misappropriated, and has repaid some of the funds.

Wells' representative testified that $363,549 was stolen and that, after credits and payments, the combined debt due Wells and Fidelity Company was $263,955.

Fidelity Company, Wells' insurance company, paid Wells $225,000 for its loss. Debtor admitted misappropriation of $240,000, but was of the opinion that $240,000 was the starting figure, as opposed to the $363,549.

At the March 16, 1999 hearing, Debtor made a profuse good faith apology to the Wells firm, his family and others, for the

---

1. This court has jurisdiction of this matter under 28 U.S.C. §§ 1334(a) and 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

2. The courts are divided over whether the debtor's failure to object to a creditor's proof of claim precludes the debtor from asserting that the debt is unliquidated. Compare, for

example, *In re Toronto*, 165 B.R. 746 (Bankr. D.Conn.1994) and *In re Rigdon*, 94 B.R. 602 (Bankr.W.D.Mo.1988), with *In re Solomon*, 166 B.R. 832 (Bankr.D.Md.1994), *aff'd*, 173 B.R. 325 (D.Md.1994), *rev'd on other grounds*, 67 F.3d 1128 (4th Cir.1995). For reasons stated hereafter, it is unnecessary in this case to resolve the dispute in this footnote. The courts that do not place significance on the unobjected to proof of claim rely on the wording of the first sentence of § 109(e) that refers to debts owed "on the date of filing."

**364**

grief that he caused to them by his lack of judgment. He apparently had made like apologies to the Wells firm in the past.

Debtor's initial Schedule F showed unsecured debts of $200,539, including a listing of an "unliquidated" claim of $160,000 for the Wells firm. (Wells' Exhibit 2.) His amended Schedule F (Wells' Exhibit 3) showed the same listing for Wells, but, among other things, he omitted a $10,961 debt to his mother Irene Visser. The amended Schedule F showed $186,230 in unsecured debt.

■ The undisputed evidence was that Fidelity Company paid Wells $225,000 on Debtor's misappropriation; therefore, its subrogee part of the Wells claim was $225,000. Per the amended Schedule F, excluding the Wells and Fidelity Company claim, the unsecured claims were $26,230. Additionally, it was undisputed that, notwithstanding the amendment of Schedule F, Debtor's mother was owed $10,961 on the date of filing. Thus, the undisputed evidence was that, considering only the Fidelity Company subrogee portion of the Wells claim ($225,000), the $26,230, and the $10,961 (and without regard to the balance of the Wells claim), Debtor was ineligible to be a chapter 13 debtor under § 109(e) since his liquidated unsecured debts totaled $262,191. From October 24, 1994 to March 30, 1998, the chapter 13 dollar limits under § 109(e) were $250,000 unsecured and $750,000 secured. The statute was amended to reflect CPI increases as of April 1, 1998. Such conclusion disposes of the § 109(e) issue.

The following brief additional discussion is for the purpose of establishing the context of such conclusion within existing case law.

■ The undersigned agrees with the following court's disagreement with *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751 (6th Cir. 1985):

> ... this Court rules that even if the schedules reflect the eligibility require-

ments are met, if it is determined within a reasonable time that the debts exceed the statutory maximums, the case must be dismissed, or the debtor may be given the opportunity to convert to a different proceeding under the Bankruptcy Code.

*Lucoski v. I.R.S. (In re Lucoski)*, 126 B.R. 332, 338 (S.D.Ind.1991).

In the case of *In re Pulliam*, 90 B.R. 241, 244, 246 (Bankr.N.D.Tex.1988), the court stated:

### B. Liquidated Debts.

[2] A debt is liquidated if the amount due and the date on which it was due are fixed or certain, or when they are ascertainable by reference to (1) an agreement or (2) to a simple mathematical formula. *[In re] Flaherty*, 10 B.R. at 120 [Bankr.N.D.Ill.1981]; *In re Potenza*, 75 B.R. 17, 19 (Bankr.D.Nev. 1987).

\* \* \*

### C. Disputed Debts.

[3] The general rule is that disputed debts should be included in the § 109(e) debt calculations.

\* \* \*

[4] The Lambert court also incorrectly concluded that a good faith dispute makes a debt unliquidated. "Liquidation ... refers to certainty as to the money value of the [debt]." *Albano*, 55 B.R. at 367. It is the character of the debt and not of any defense that determines whether a debt is liquidated. The existence of a dispute over part or all of a debt does not convert the debt from a liquidated one to an unliquidated one. C. McCormick, *Damages* § 54 (1935).

See also *United States v. Verdunn*, 89 F.3d 799, 802 & n. 9 (11th Cir.1996), where the court, citing to numerous authorities, opined that the overwhelming body of precedent is that debts in dispute are included

in the § 109(e) computations and further stated:

> *Black's Law Dictionary* defines a liquidated debt as one where it is certain what is due and how much is due. *Black's Law Dictionary* 930 (6th ed.1990). A liquidated debt is that which has been made certain as to amount due by agreement of the parties or by operation of law. *Id.* Therefore the concept of a liquidated debt relates to the amount of liability, not the existence of liability. *See In re McGovern,* 122 B.R. 712, 715 (Bankr.N.D.Ind.1989); *see also* C. McCormick, *Handbook on the Law of Damages,* § 54 at 213 (1935). If the amount of the debt is dependent, however, upon a future exercise of discretion, not restricted by specific criteria, the claim is unliquidated. *See* 1 T. Sedgwick, *Measure of Damages,* § 300 at 570 (9th ed.1912).[13]

---

13. "For an example, we may take the case of a claims for damages for personal injury resulting from assault and battery, or a case of seduction, or libel. Here the elements from which to ascertain the amount of the demand are wholly at large. The defendant has no means of knowing in advance of proof what the precise pecuniary damage had been, still less what should be allowed for pain and suffering. Even the plaintiff, short of an assessment of damages by a jury, cannot give him the necessary information. Down to the time of verdict the claim is entirely unliquidated." *T. Sedgwick,* supra at 570.

In *In re McGovern,* 122 B.R. 712, 717–18 (Bankr.N.D.Ind.1989), the court was concerned with a misappropriation claim and stated:

> Determining the amount due because of this claim does not involve the use of judgment or discretion. While judgment and discretion must necessarily play a role in determining the existence of liability, the amount of any liability will require only simple arithmetic. After determining debtor's liability for a multitude of separate events, we need only add up the amount of money involved in each to determine the amount

of the claim. This will require only mathematics not the exercise of judgment. *See Floyd v. Jay County REMC,* 405 N.E.2d 630, 636 (Ind.App.1980). As a result, the claim is a liquidated one.

\* \* \*

Given the preliminary nature of the court's inquiries for the purpose of determining Chapter 13 eligibility, the court's decision cannot and should not be interpreted as a determination that the amounts claimed due the movants are in fact correct or accurate. Instead, it means only that "the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion." *Matter of Vaughan, supra,* 36 B.R. at 938 (citing C.T. McCormick, *supra* ). That the debtor may wish or be able to challenge or controvert this evidence does not change the fact that it exists and is, potentially, capable of being believed. Our decision does not preclude the debtor from having the opportunity to do so. It means only that this opportunity must be exercised in a different forum or under the auspices of a different chapter of the Bankruptcy Code.

Under the foregoing authorities, the full amount of the Wells claim, not just the F & G portion, is part of the § 109(e) unsecured debt eligibility computation for chapter 13. Judgment will be entered in accordance with the foregoing opinion.

## *ORDER ON MOTION TO DISMISS*

For the reasons stated in the opinion signed this date, it is

**ORDERED** that the chapter 13 case of David A. Visser will be automatically dismissed effective seven days from entry of this order, without further order of this Court unless David A. Visser converts to

another bankruptcy chapter for which he is eligible.