**In re Robert Michael HORNE, Debtor.**

**No. 01–40968.**

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

March 12, 2002.

---

Christopher J. Moser, Quilling, Selander, Cummiskey & Lownds, Dallas, TX, for Debtor.

Janna L. Countryman, Plano, TX, trustee.

## OPINION

DONALD R. SHARP, Chief Judge.

Now before the Court for consideration is the Standing Chapter 13 Trustee's Motion To Dismiss. This opinion constitutes the Court's findings of fact and conclusions of law required by Fed.R.Bankr.Proc. 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 15, 2001, Michael Gregory Horne ("Debtor") filed a voluntary petition for relief under Chapter 13 of Title 11 of the U.S.Code. Five and one-half months later, on September 6, 2001, the State of Texas Office of the Attorney General ("Texas") filed an unsecured claim in the case in the amount of $485,375.00. The unsecured claim of Texas resulted from a judgment entered on August 17, 2001, by the United States District Court for the Western District of Texas, Austin Division against Michael Gregory Horne, Robert Michael Horne and American Blast Fax, Inc., a corporation in which the Debtor was an officer and a 50% shareholder as of the date of filing his Schedules and Statement of Financial Affairs. The Chapter 13 Trustee ("Trustee") filed this Motion to Dismiss (the "Motion"), seeking dismissal of the case on the basis that the Debtor does not qualify for relief under Chapter 13 because his unsecured debt exceeds the limits set forth in 11 U.S.C. § 109(e) of the Bankruptcy Code. The parties presented the issue to the Court as whether the unsecured claim filed by the State of Texas was liquidated on the date of the filing of the petition ("Petition Date"). If the unsecured claim filed by Texas is not a liquidated debt under 11 U.S.C. § 109(e), the Debtor qualifies for relief under Chapter 13. If, however, the claim of Texas was liquidated on the Petition Date, then the Debtor exceeds the statutory debt limitations imposed under such section of the Code and is not eligible to be a Chapter 13 Debtor.

The Motion came on for trial pursuant to regular setting and the matter was tak-

en under advisement. At the trial, the parties submitted Stipulations and exhibits to the Court, including the Findings of Fact and Conclusions of Law ("*Plaintiff's Exhibit I*") entered in the District Court case which gave rise to the State's claim. The trial on the merits was held on March 16, 2001, the day after the Debtor filed his petition for relief.[1]

## DISCUSSION

■ Under to 11 U.S.C. § 109, entitled "who may be a debtor":

[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000 may be a debtor under chapter 13 of this title.

**1.** The automatic stay did not apply to the cause of action insofar as it was filed by a governmental unit to enforce its police or regulatory power including matters of the violation of consumer protection laws. See 11 U.S.C. § 362(b)(4) and *In re Commonwealth Oil Refining Co.*, 805 F.2d 1175, 1182–83 (5th Cir.1986) *cert. denied*, 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987).

**2.** This subsection of the statute neither specifically includes nor excludes disputed debts nor distinguishes disputed from non-disputed debts of the debtor for purposes of the debt limits imposed. The issue has been examined by numerous courts. "The general rule is that disputed debts should be included in the § 109(e) debt calculations. . . . . The existence of a dispute over part or all of a debt does not convert the debt from a liquidated one to an unliquidated one." *In re Visser*, 232 B.R. 362, 364–65 (Bkrtcy.N.D.Tex.1999) citing to

*11 U.S.C. § 109(e)*.[2] Movant bears the burden of proof to demonstrate to the Court, by a preponderance of the evidence, that the Debtor does not comply with the § 109 debt limit. *United States v. May*, 211 B.R. 991, 997 (M.D.Fla.1997). It has not been contested that the Debtor was an individual with a regular income on the date of filing nor that the debt in question was unsecured. Whether the debt was noncontingent debt upon such date was not placed at issue. The Bankruptcy Code does not define "liquidated" debt.[3] There is inconsistency in the jurisprudence on the issue of what constitutes liquidated debt. According to Black's Law Dictionary, a liquidated debt is one in which "it is certain what is due and how much is due." Black's Law Dictionary 930 (6th ed.1990). Black's Law Dictionary is not legal authority, notwithstanding that virtually all the cases cited herein refer to Black's definition.

### *Was the debt liquidated on the date of filing?*

■ As support for the position that the claim which is the subject of the controver-

C. McCormick, *Damages* § 54 (1935) and also to *United States v. Verdunn*, 89 F.3d 799, 802 & n. 9 (11th Cir.1996) ["where the court, citing to numerous authorities, opined that the overwhelming body of precedent is that debts in dispute are included in the § 109(e) computations"]. The *Verdunn* Court cited to *In re Knight*, 55 F.3d 231, 234 (7th Cir.1995) [the case favored by the Standing Chapter 13 Trustee in the matter before this Court.] See *In re Pulliam*, 90 B.R. 241, 245–246 (Bkrtcy. N.D.Tex.1988) for a sound discussion of the issue. *Cf. In re Lambert*, 43 B.R. 913, 915 (Bkrtcy.D.Utah 1984). Moreover, "just because a claim is unliquidated, disputed or unmatured apparently does not mean it is contingent." *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bkrtcy.S.D.Tex.1980), *aff'd*, 646 F.2d 193 (5th Cir.1981); *Semel v. Dill (In re Dill)*, 731 F.2d 629, 631 (9th Cir.1984).

**3.** Neither does it define "contingent" debt.

sy was a liquidated debt as of the date of the filing, the Standing Chapter 13 Trustee relied upon *In re Knight,* 55 F.3d 231, 235 (7th Cir.1995). The Chapter 13 Trustee cited *In re Knight* for its method for determining whether a debt is liquidated: "[i]f the amount of a claim has been ascertained or can readily be calculated, it is liquidated—whether contested or not." *In re Knight, Ibid* at 235 citing to *Norton, Bankruptcy Law & Practice § 18:12 at 18–48* [4], but also citing to *In re Fostvedt,* 823 F.2d 305, 306 (9th Cir.1987) ("[T]he question whether a debt is liquidated turns on whether it is subject to 'ready determination and precision in computation of the amount due.' ").[5] The Chapter 13 Trustee argues that, notwithstanding that the judgment against the Debtor was entered post-petition, the debt was readily subject to computation at the time the petition was filed, given that the presiding judge calculated the amount of the judgment against the debtor based upon an equation set forth in that Court's findings of fact and conclusions of law. However, in relying upon the *Knight* case, the Chapter 13 Trustee misses an important distinction between that case and the instant matter. In *Knight,* the Debtor was a former municipal judge in the state of Indiana and had failed to report 915 traffic fines to the Department of Motor Vehicles in that state. The Indiana State Statutes provided a penalty of $100.00 per case for each failure of a municipal court judge to report a fine. An audit of the court's records had determined that there were 915 fines not reported and had also determined and calculated an additional amount of misappro-

priated funds. Those amounts had been calculated by an audit of the court records and a demand had been made upon the Debtor pre-petition to pay the exact amount. Debtor argued unsuccessfully that the amount was unliquidated because it had never been reduced to judgment but the bankruptcy court determined that the exact amount of the debt was clear and therefore, it was a liquidated debt. That decision was upheld by the District and Circuit Court of Appeals.

The issues at trial in the District Court were the amount of damages and the scope of injunctive relief, if any, for Blastfax's violations and whether the individual defendants could be held personally liable for these violations. The District Court found the Debtor personally liable for violations of the Texas Consumer Protection Act ("TCPA") and found the violations to have been wilful and knowing for violations that occurred from February 9, 2001 through March 15, 2001. Treble damages may be awarded for wilful violations of the TCPA at the discretion of the court. The District Court determined that the Debtor, his co-shareholder and the corporation violated the TCPA a total of 937,500 times a month from October 5, 2000 to March 15, 2001. The Court calculated the damages at $459,375 based upon a formula it devised. In short, according to the Chapter 13 Trustee, simply because the calculation took place after the bankruptcy filing, did not alter the fact that the claim was liquidated. According to the Standing Chapter 13 Trustee, the ability to calculate the damages based upon a specific formula rendered the debt liquidated.

---

**4.** *Norton,* like *Black's Law Dictionary,* is not an authority to this Court.

**5.** There is an abundance of case law, including, *inter alia, United States v. Verdunn,* 89 F.3d 799, 802 & n. 9 (11th Cir.1996) and *In re Visser,* 232 B.R. 362 (Bkrtcy.N.D.Tex.1999) to

support the proposition that the existence of a dispute over part or all of a debt does not convert the debt from a liquidated one to an unliquidated one. Most of the cases cite to C. McCormick, *Damages* 54 (1935) for this proposition.

■ The Debtor agrees that if one can simply calculate the damages and ascertain them with certainty in a simple fashion, a debt is a liquidated debt, but argues that if one needs to use independent judgment, or any sort of discretion at all, then the debt is unliquidated. The Debtor relied upon *In re Visser*, 232 B.R. 362 (Bkrtcy.N.D.Tex.1999) in which the debtor, an attorney, misappropriated funds from his law firm's IOLTA account in the amount of $363,549.[6] The *Visser* Court espoused the following definition:

> A debt is liquidated if the amount due and the date on which it was due are fixed or certain, or when they are ascer-

tainable by reference to (1) an agreement or (2) to a simple mathematical formula. *[In re] Flaherty*, 10 B.R. at 120 [(Bankr.N.D.Ill.1981)]; *In re Potenza*, 75 B.R. 17, 19 (Bankr.D.Nev.1987).

*Visser, Ibid* at 364–365 citing to *In re Pulliam*, 90 B.R. 241, 244–46 (Bkrtcy. N.D.Tex.1988).[7] The element of "discretion" being a distinguishing factor to discern whether a debt is liquidated was adopted by the *Visser* Court from the rationale applied by the court in the case of *In re McGovern*, 122 B.R. 712, 717–18 (Bkrtcy.N.D.Ind.1989)[8], citing to a Seventh Circuit Court opinion.

6. The law firm's claim was for $263,955. Visser had listed the claim in his schedules in the lesser amount of $160,000. Certain other debts on Visser's schedule of unsecured claims were not listed and resulted in later amendment to $186,230. Visser's former employer—and its insurance company, moved for dismissal on the grounds that the debtor was not eligible for Chapter 13 relief. Regarding the issue of distinguishing "liquidated" from "unliquidated" debt, the *Visser* Court cited to an earlier bankruptcy case issued from a Northern District bankruptcy court, *In re Pulliam*, 90 B.R. 241, 244–46 (Bkrtcy.N.D.Tex.1988).

7. The *Visser* Court cited to *In re Pulliam*, 90 B.R. 241 (Bkrtcy.N.D.Tex.1988); however, *In re Pulliam* is but a step in a line of authority reaching back to 1890. *In re Pulliam* cited *In re Flaherty*, 10 B.R. 118, 120 (Bkrtcy.N.D.Ill. 1981) citing to *Zimek v. Illinois National Casualty Co.*, 370 Ill. 572, 577 19 N.E.2d 620 (1939)["Where the amount due may be ascertained by computation or reference to the contract out of which the claim arises it is a liquidated claim for purposes of garnishment." 28 *Corpus Juris*, p. 136; *Capes v. Burgess*, 135 Ill. 61, 25 N.E. 1000 (1890)]. The Supreme Court of Illinois, in 1890, in *Capes v. Burgess*, a garnishment matter, reasoned:

> An obligation can be said to be due only when it is of such character that the debtor may or ought to discharge it at once by payment, and that can be done only where the amount of the obligation is ascertained or is capable of being ascertained by com-

putation. Where the liability consists of damages which are unliquidated and uncertain in amount, and can be rendered certain only by the judgment of a court, such liability cannot be said to be due or to be capable of becoming due until judgment has been rendered. In such case, the party liable is under no obligation to pay, nor can he discharge himself by payment, until his liability has been ascertained and fixed by judicial proceedings.

*Capes v. Burgess, Ibid* at 1001. While the line of opinions recited fail to bind this Court, they provide guidance. *Capes v. Burgess* was adopted in Texas in 1902 with respect to garnishment jurisprudence when the Texas Supreme Court "blessed" *Capes v. Burgess* as good reasoning in *Waples–Platter Grocer Co. v. Texas & P. Ry. Co.! Waples–Platter Grocer Co. v. Texas & P. Ry. Co.*, 95 Tex. 486, 488, 68 S.W. 265, 266 (1902) ["the weight of authority and the better reason support the rule that, when the damages are unliquidated and in their nature uncertain, the demand is not subject to garnishment"].

8. In *In re McGovern*, 122 B.R. 712, 717–18 (Bankr.N.D.Ind.1989), the court was concerned with a misappropriation claim and stated:

> Determining the amount due because of this claim does not involve the use of judgment or discretion. While judgment and discretion must necessarily play a role in determining the existence of liability, the amount of any liability will require only simple arithmetic. After determining debt-

[I]f the amount of the claim can be ascertained, or is capable of ascertainment by mere calculation or computation, it is liquidated; if judgment, discretion, or opinion, as distinguished from calculation or computation is required to determine the amount of the claim, it is unliquidated. *First National Bank v. Insurance Co.*, 606 F.2d 760, 769–70 (7th Cir.1979) (applying Illinois law). See also *Public Service Co. v. Bath Iron Works Corp.*, 773 F.2d 783, 796 (7th Cir.1985) (applying Indiana law). Thus, a claim is unliquidated when the finder of fact must rely upon its judgment to establish an appropriate amount to compensate for past and future injury. See *Public Service Co. v. Bath Iron Works Corp.*, *supra*, 773 F.2d at 796. It is liquidated when judgment or discretion is not required. If not, it is liquidated. A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion.

*In re McGovern*, 122 B.R. 712, 717–18 (Bkrtcy.N.D.Ind.1989).[9]

Although the Trustee argues that the District Court in our case used a simple formula to calculate the damages, a complete reading of the District Court's reasons for judgment makes it clear that this was no simple matter and bears no relationship to the simple formula used in the *Knight* case. The posture of the litigation in the case at bar on March 15, 2001, the Petition date, was vastly different from the situation in the *Knight* case or in any of the other cases relied upon by the Trustee. In this case, the District Court had partially granted the State's Summary Judgment Motion and held that the corporate defendant had violated the Texas Consumer Protection Act by sending unsolicited intrastate fax advertisements and that the corporation had violated the Texas Deceptive Trade Practices Act by misleading Texas consumers about the legality of its business. The District Court had specifically reserved for trial the question of the amount of damages and the scope of injunctive relief as to the corporation and had specifically reserved for trial the question of whether the individual defendants, of whom Debtor was one, could be personally liable for these violations. That issue was submitted to the Court for trial after the bankruptcy petition was filed. The Court ultimately determined that the Debtor, a corporate officer, was individually liable for his actions and liable for his actions as a corporate officer. However, a reading of the reasons for judgment makes it clear that this was no simple application of a mathematical formula. The Court had to determine the number of unsolicited faxes mailed; the percentage of those actually received and had to determine the degree of willfulness on the part of the individual defendants to determine the penalties applicable to them. The Court then looked at the question of damages based on the application of the Texas Statute and determined that under one con-

---

or's liability for a multitude of separate events, we need only add up the amount of money involved in each to determine the amount of the claim. This will require only mathematics not the exercise of judgment. See *Floyd v. Jay County REMC*, 405 N.E.2d 630, 636 (Ind.App.1980).

**9.** "Liquidation relates only to the amount of liability. It does not concern the existence of liability itself." *In re McGovern*, 122 B.R. 712, 715 (Bankr.N.D.Ind.1989). See also C. McCormick, Handbook on the Law of Damages, § 54 at 213 (1935). If the amount of the debt is dependent, however, upon a future exercise of discretion, not restricted by specific criteria, the claim is unliquidated. See 1 T. Sedgwick, Measure of Damages, § 300 at 570 (9th ed.1912).

struction of the Statute, which provided for a $500.00 award for each violation, the penalty would be "inequitable and unreasonable." The Court then made a determination based on its analysis of the cost to the recipient of each unwanted fax page that an appropriate award in this case would be seven cents per violation. The Court also had to assess the question of willful and knowing violation of the Statute and found that for a portion of the time, the Defendant's conduct was willful and knowing and therefore, the damages for that period of time was trebled. The Court additionally made an award to the state of attorney fees based on its determination of the reasonable amount of the fees.

It is clear that this was no simple mathematical computation engaged in by the District Court in the Western District of Texas. It was a careful analysis of a large amount of evidence and although it may be remote, there was always the possibility that the Court could have determined that the individual Debtor had no liability whatsoever since that was an issue reserved for trial.

 This Court agrees with the Seventh Circuit Court that "if judgment, discretion, or opinion... is required to determine the amount of the claim, it is unliquidated". *First National Bank v. Insurance Co.*, 606 F.2d 760, 769–70 (7th Cir.1979) (applying Illinois law). See also *Public Service Co. v. Bath Iron Works Corp.*, 773 F.2d 783, 796 (7th Cir.1985). In this instance, the evidence of application of judicial discretion is clear from the language of the Findings. Simple mathematics alone did not supply the value of the State's claim as determined by the District Court and, therefore, the claim was not liquidated or certain on the date of the filing of the petition, nor did it become so until the District Court's final judgment was rendered.

## Conclusion

This Court must conclude that the debt owed to the State by the Debtor/defendant, as reprehensible as his conduct may have been, could not have been liquidated on the date of the filing of the petition under any theory of what constitutes a liquidated debt. The Movant has not carried its burden and the Motion To Dismiss must be denied. An order will be entered accordingly.